# EXHIBIT "A"

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement ("Agreement") is dated February 21, 2012, and is between **FISHBEIN FAMILY, LLC**, a New Jersey limited liability company ("Seller"), and **LUSARDI GROUP, LLC**, a New Jersey limited liability company or its Permitted Assignee ("Purchaser").

Seller is the owner in fee simple of the Land (as hereinafter defined), upon which is constructed the Improvements (as hereinafter defined).

Seller desires to sell, and Purchaser desires to acquire, the Property (as hereinafter defined) subject to and on the terms and conditions hereinafter set forth.

The parties therefore agree as follows:

1. **Definitions.** For purposes of this Agreement, each of the following terms have the respective meanings set forth below:

(a) "Closing" means the conveyance of title to the Property to Purchaser pursuant to this Agreement.

(b) "Closing Date" means the date which is on or about thirty (30) days after the Go Hard Date (defined in Section 1(e)).

(c) "Effective Date" means the date upon which a fully executed copy of this Agreement is provided to counsel for the Purchaser.

(d) "Environmental Laws" means all statutes, laws, ordinances, codes and regulations of any federal, state or local governmental authority regulating, relating to, or imposing liability concerning Hazardous Substances (defined in Section 1(g)), public health and safety or the environment now or existing or hereafter enacted or effective.

(e) "Escrow Agent" means Price, Meese, Shulman & D'Arminio, P.C., a New Jersey professional corporation.

(f) "Go Hard Date" means the forty-fifth (45th) day after the later of the Effective Date or the date on which the Due Diligence Documents are delivered to Purchaser, as such date may be extended pursuant to Section 7 of this Agreement.

(g) "Hazardous Substances" means all hazardous waste, hazardous substances, hazardous materials, toxic substances, or related substances or materials, asbestos, radon, petroleum products, as each of the foregoing terms are defined under relevant Environmental Laws.

(h) "Improvements" means the single-story industrial building with a "footprint" measuring approximately 51,752 square feet (which building includes an office area consisting of approximately 4,000 square feet and a second-floor mezzanine consisting of approximately

4,000 square feet), and any and all other existing structures and parking facilities, located on the Land.

(i) "Land" means the tract or parcel of land located at 50 Industrial Road, in the Township of Berkeley Heights, County of Union, State of New Jersey, and listed as Lot 14.1 in Block 1301 on the tax map of the Township of Berkeley Heights, and more particularly described in the Due Diligence Documents. Included with the Land is all of Seller's right, title, interest and the privileges and appurtenances thereto appertaining, as well as all driveways and rights-of-way abutting or adjoining the real property and all easements benefiting the same.

(j) "Leases" means all leases, occupancy and other agreements, together with any and/or amendments and modifications of each thereof pertaining to or covering any space within the Property which Seller will provide to Purchaser as part of the Due Diligence Documents.

(k) "Legal Requirements" means all laws, statutes, codes, and ordinances of all federal, state and local governmental authorities and agencies, which now or at any time prior to Closing may be applicable to Property or other use or operation thereof.

(l) "Operating Agreements" means any management, security, janitorial/cleaning, maintenance, pest control, trash removal, equipment leases, and other such agreements with respect to or affecting the Property or any portion thereof which Seller will provide to Purchaser as part of the Due Diligence Documents.

(m) "Permitted Assignee" means any corporation, limited liability company, or other entity (a) which is an affiliate, subsidiary, parent or successor of Purchaser, or (b) which controls, or is controlled by, or is under common control with, Purchaser.

(n) "Permits" means any certificates of occupancy and completion with respect to the Improvements and Property.

(o) "Property" means the Land and Improvements, exclusive of any personal property located thereon as of the Effective Date.

2. **Purchase and Sale.** Purchaser shall purchase the Property from Seller, and Seller shall sell, convey, transfer and assign the Property to Purchaser, subject to and in accordance with the terms and conditions of this Agreement. Except as specifically set forth herein, Purchaser is purchasing the Property in its "AS-IS, WHERE-IS" condition. Purchaser acknowledges and agrees that neither Seller nor any other person acting or purporting to act on behalf of Seller has made any warranty or representation concerning the Property, or its operation, which is not contained in this Agreement.

3. **Purchase Price and Deposit.** (a) The purchase price for the Property is two million, nine hundred fifty thousand and 00/100 dollars ($2,950,000.00; the "Purchase Price").

(b) Purchaser shall pay the Purchase Price to Seller, subject to the adjustments and prorations as herein provided, as follows:

(i) No later than one (1) business day after Purchaser's receipt of a fully-executed Agreement, Purchaser shall deliver an initial deposit ("Initial Deposit") via wire transfer or check, in the amount of one hundred thousand and 00/100 dollars ($100,000.00) to the Escrow Agent, which Deposit Escrow Agent shall hold in its escrow account. No later than three (3) business days after Bankruptcy Court Approval, Purchaser shall deliver a second deposit ("Second Deposit") via wire transfer or check, in the amount of fifty thousand and 00/100 dollars ($50,000.00) to the Escrow Agent, which Deposit Escrow Agent shall hold in its escrow account. The First Deposit and the Second Deposit, when paid, shall be referred to as the "Deposit". In the event Purchaser terminates this Agreement pursuant to the terms hereof or there is a failure of a condition or contingency, Escrow Agent shall return the Deposit, or so much of same as shall have been paid, to Purchaser; otherwise, Purchaser hereby authorizes Escrow Agent to release the Deposit to Seller at Closing.

(ii) Purchaser shall pay the balance of the Purchase Price (*i.e.*, the amount of $2,800,000.00, subject to Section 11) at Closing by wire transfer, or bank, attorney trust or certified check.

(c) Seller and Purchaser hereby authorize and direct Escrow Agent to promptly deposit and to hold the Deposit in escrow and to disburse same subject to clearance thereof in accordance with terms and conditions of this Agreement. In the event of doubt regarding Escrow Agent's duties or liabilities pursuant to the terms and conditions of this Agreement, Escrow Agent may, in its sole discretion, continue to hold the Deposit until the parties mutually agree to the disbursement thereof, or until a judgment of a court of competent jurisdiction determines the rights of the parties thereof; or Escrow Agent may deposit the Deposit with the Clerk of the Superior Court, Union County, or such other court having jurisdiction of the dispute; and, upon notifying all parties concerned of such action, all liability on the part of the Escrow Agent will fully terminate, except to the extent of accounting for any portion of the Deposit theretofore delivered out of escrow. In the event of any suit between Purchaser and Seller wherein the Escrow Agent is made a party by virtue of acting as such Escrow Agent hereunder, or in the event of any suit wherein the Escrow Agent interpleads the subject matter of his escrow, the Escrow Agent may recover a reasonable attorney's fee and costs incurred, said fees and costs to be charged and assessed in favor of the prevailing party. The parties hereto agree that the Escrow Agent is not liable to any party or person for mis-delivery to Purchaser or Seller of the Deposit, unless such mis-delivery is due gross negligence or due to an intentional breach or willful breach of this Agreement.

4. **Due Diligence Documents.** Within three (3) days after the date of this Agreement, Seller shall deliver to Purchaser the documents in Seller's actual possession relating to the ownership, management, and physical condition of the Property (such documents, the "Due Diligence Documents"), which Due Diligence Documents (a) include, but are not limited to, leases, contracts, equipment leases, service agreements, government permits, and information in Seller's possession relating to the Property concerning (i) any maintenance issues, (ii) structural reports and (iii) all environmental issues within the last five (5) years. Purchaser acknowledges and agrees that such documents and information are provided or made to the best of Seller's

actual knowledge. Purchaser shall use the Due Diligence Documents to assist Purchaser in independently confirming the information contained therein. Purchaser shall not use the Due Diligence Documents for its own use or for any purpose except to evaluate the proposed purchase of the Property. Further, Purchaser shall keep all of the Due Diligence Documents strictly confidential, and shall only disclose the information in the Due Diligence Documents to other persons or advisors who have a need to know the information therein in the course of the performance of their duties analyzing or evaluating the proposed purchase of the Property by Purchaser, and who agree to be bound to protect the confidentiality thereof.

5. **Access and Investigations.**

(a) "General Inspection Period" means the period commencing on the later of the Effective Date or the date upon which the Due Diligence Documents are actually delivered, and ending on the Go Hard Date.

(b) During the General Investigation Period, Purchaser at its sole cost and expense may: (i) investigate the Property including, but not limited to, the title and survey; (ii) inspect and examine the Due Diligence Documents, public records, and the status of the surrounding development and environmental conditions; (iii) inspect the Property and equipment therein, including without limitation, the roofs, walls, foundations, heating, ventilation and air-conditioning systems, plumbing systems and electrical systems thereof ; and (vi) conduct environmental due diligence (all of the following activities being hereinafter collectively referred to as "Purchaser's Investigations"). Seller hereby grants permission for Purchaser and its agents, employees and contractors to inspect the Property and to enter upon the Property during the General Inspection Period to make such test borings, surveys, percolation tests, and other engineering studies and site analyses as Purchaser may require, including environmental, structural, termite and mold investigations. Seller shall reasonably cooperate with Purchaser in making such surveys and conducting Purchaser's Inspections. Purchaser shall perform the forgoing tests at Purchaser's sole expense and during normal business hours. Purchaser shall repair any damage to the Property caused by Purchaser's Inspections. Purchaser shall only provide Seller with copies of any reports, surveys and analyses generated from Purchaser's Inspections upon Seller's written request. Notwithstanding anything in the foregoing to the contrary, in connection with Purchaser's entry onto the Property, Purchaser shall not adversely affect the business operations or access of Seller or any tenant of the Property.

(c) Purchaser shall hold and save Seller harmless from and against any and all loss, cost, damage, injury or expense arising out of or in any way related to the acts or omissions of Purchaser, its agents and consultants, relating to any such entry. Prior to any such entry, Purchaser shall furnish to Seller evidence that Purchaser has procured comprehensive general liability insurance reasonably acceptable to Seller from an insurer authorized to do business in the State of New Jersey, protecting Seller from claims for bodily injury, death or damage to property in limit amounts of not less than $1,000,000 per occurrence, and a combined limit of not less than $2,000,000.00, and naming Seller as an additional insured. Purchaser agrees that the indemnification provision contained herein will survive the termination of this Agreement and/or the Closing.

6. **Purchaser's Obligations.** Prior to the Go Hard Date, Purchaser shall: (i) make every effort to obtain purchase-money financing from a reputable bank or institutional lender; and (ii) examine title to the Property and use commercially reasonable efforts to obtain a commitment for an owner's policy of title insurance from a title insurance company authorized to transact business in New Jersey.

7. **Purchaser's Termination Option.** (a) If, prior to the Go Hard Date,

(i) Purchaser is unable to obtain purchase-money financing; or

(ii) the Property is unacceptable to Purchaser, in its sole and absolute discretion; or

(iii) title to the Property is unsatisfactory to Purchaser in its reasonable judgment; or

(iv) Seller has not obtained Bankruptcy Court Approval (defined in Section 20),

then, provided Purchaser is not in default of this Agreement, Purchaser may terminate this Agreement by providing Seller with written notice of termination ("Termination Notice"), TIME BEING OF THE ESSENCE with regard to the delivery of such termination notice. In the event Purchaser timely delivers a valid Termination Notice to Seller, Escrow Agent shall return the Deposit to Purchaser, and this Agreement will be null and void as of the date of such notice and neither Purchaser nor Seller will have any further rights or liabilities hereunder, except those that expressly survive termination.

(b) In the event Purchaser fails to deliver a valid Termination Notice prior to the Go Hard Date, then: (i) Purchaser will be conclusively deemed to have (x) waived its right to terminate this Agreement, and (y) examined the Property and determined the Property to be acceptable in all respects, including but not limited to title, zoning, economic conditions, environmental, and state of repair and (ii) Purchaser shall purchase the Property pursuant to this Agreement, subject only to the contingencies set forth in Section 8.

(c) Notwithstanding anything in this Section 7 to the contrary, if Seller has not obtained Bankruptcy Court Approval by three (3) business days prior to the Go Hard Date, the Go Hard Date shall be extended to the date which is five (5) business days after the Bankruptcy Court Approval has been obtained or denied and Purchaser has been notified of same in writing. Notwithstanding the foregoing, if the Go Hard Date has not occurred by the date which is seventy-five (75) days after the Effective Date, provided Seller is not in default hereunder (and has diligently and in good faith pursued the Bankruptcy Court Approval), Seller, in its sole and absolute discretion, (in addition to Purchaser's right to terminate pursuant to Paragraph 7(a), above) may terminate this Agreement at any time thereafter by providing Purchaser with written notice thereof. In the event Seller delivers such notice of termination to Purchaser, Escrow Agent shall return the Deposit to Purchaser, and this Agreement will be null and void as of the date of such notice and neither Purchaser nor Seller will have any further rights or liabilities hereunder, except those that expressly survive termination.

8. **Contingencies.** The obligation of Purchaser to purchase the Property is contingent

upon satisfaction of the following conditions, any or all of which the Purchaser may waive in whole or in part:

(a) Seller's Representations. All Seller's representations set forth in this Agreement remain accurate as of the Closing Date, and Seller reconfirms such representations in writing (the "Bring Down Certificate").

(b) Seller's Obligations. Seller delivers its required closing documents and otherwise performs its obligations under this Agreement.

9. **Closing.** Subject to satisfaction of all contingencies of this Agreement and conditions to Closing, the parties shall conduct the Closing at the offices of the Purchaser's attorney or lender during regular business hours on the date which is on or about thirty (30) days after the Go Hard Date ("Closing Date").

10. **Conveyances and Deliveries at Closing.** At Closing, Seller shall do each of the following:

(a) convey the Property to Purchaser by a duly-executed and recordable Bargain and Sale Deed with covenants against Grantor's act, subject to covenants, conditions, restriction, easements, etc., as of record;

(b) assign to Purchaser all of Seller's interest in any permits, plans and specifications, warranties, trade name and any Operating Agreements which Purchaser has elected in writing to assume;

(c) execute and deliver to Purchaser (i) a certificate stating that Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code and the regulations thereunder, (ii) an IRS Form 1099 with respect to this transaction, and (iii) an affidavit of title in a form reasonably acceptable to Purchaser's title company;

(d) execute, acknowledge and deliver to the Purchaser an Affidavit of Title in usual form;

(e) execute, acknowledge and deliver a Resolution;

(f) deliver keys to the Property;

(g) deliver to Purchaser any Certificates of Occupancy or Smoke Certificates which may be required by governmental authorities for the transfer of title or, in the event same is not required, a letter from the municipality indicating such is the case;

(h) execute and deliver the Bring Down Certificate;

(i) deliver to Purchaser such other documents as may be reasonably required by Purchaser's title insurance company; and

(j) provide Purchaser with a credit against the Purchase Price in the amount of the Deposit.

11. **Prorations & Closing Costs**. The parties shall make all prorations provided to be made "as of the Closing Date" as of 11:59 p.m. local time on the date immediately preceding the Closing Date. The parties shall, as applicable, prorate the following items between Purchaser and Seller or credit same to Purchaser or Seller:

(a) <u>Property Taxes and Assessments</u>. All water and sewer fees, charges or rentals, general property taxes and assessments with respect to the Property shall be prorated and apportioned on a per diem basis as of the Closing Date based on the latest available tax information.

(b) <u>Closing Costs</u>. Seller shall pay the transfer tax imposed on the transfer of the Property to Purchaser, if applicable. Purchaser shall pay all recording fees imposed for recording the deed, and mortgage, if applicable. Each party shall pay its own counsel fee.

12. **Seller's Representations**. (a) Seller represents to Purchaser, to the best of its actual knowledge without any independent inquiry or investigation, as of the date of this Agreement, as follows:

(i) <u>Organization, Power and Authority</u>. Seller is a duly-formed limited liability company, validly existing, and in good standing under the laws of the State of New Jersey, and qualified to transact business in the State of New Jersey. Subject to Bankruptcy Court Approval, the execution, delivery, and performance of this Agreement by Seller has been duly and validly authorized by all necessary action on the part of Seller.

(ii) <u>No Litigation</u>. Except for the Bankruptcy (defined in Section 20), Seller is not a party to or being affected by any litigation, administrative action, investigation or other governmental or quasi-governmental proceeding which would or could have an adverse effect upon the Property or upon the ability of Seller to fulfill its obligations under this Agreement.

(iii) <u>Condemnation</u>. Seller has not received any notice of proceedings pending nor are any proceedings threatened against or affecting the Property or any portion thereof or interest therein in the nature of or in lieu of condemnation or eminent domain proceedings.

(iv) <u>Assessments</u>. Seller has not received written notice of any assessments by a public body, whether municipal, county or state imposed, contemplated or confirmed and ratified against any of the Property for public or private improvements which are now or hereafter payable.

(v) <u>Operating Agreements</u>. The only Operating Agreements affecting the

Property are those disclosed in the Due Diligence Documents, none of which shall be binding upon the Purchaser.

(vi) <u>Employees</u>. There are no persons who are employed by Seller in connection with the management, operation or maintenance of the Property.

(vii) <u>Leases</u>. There are no Leases affecting the Property which will survive the Closing Date and the Property will be delivered vacant and in "broom swept" condition.

(viii) <u>No Violation</u>. Seller has not received written notice of any violation of any law, ordinance or statute regarding the current use of the Property as an industrial building.

(ix) <u>Underground Storage Tanks/Environmental Contamination</u>. There are no underground storage tanks which presently exist on the Property or, to the best of Seller's knowledge and belief, previously existed on the property. Further, Seller is not aware of any environmental contamination which presently affects the Property. The Seller represents that the Seller has not received a summons, citation, directive, letter or other communication, written or oral, from the New Jersey Department of Environmental Protection concerning any intentional or unintentional action or omission on the Seller's part resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "hazardous substances", as such term is defined in N.J.S.A. 58:10-23.1 lb(k), into the waters or onto the Premises of the State of New Jersey.

(x) There are no liens or encumbrances which cannot be satisfied by the net proceeds of sale and/or Seller has the financial ability to fulfill its obligations pursuant to this Agreement, subject to Bankruptcy Court Approval.

(xi) The Seller is not aware of the existence of any documents or reports concerning the existence of any latent conditions which reports are not in Seller's actual possession.

(xii) The mortgagee of the Property has been notified of the within matter.

(b) <u>No Survival</u>. The foregoing representations by Seller's Agents pursuant to Section 12(a) will survive the Closing Date for a period of forty five (45) days following the Closing.

13. **Operations Pending Closing.** (a) From and after the date hereof, through and including the Closing Date, Seller agrees as follows:

(i) <u>Management Prior to Closing</u>. (A) Seller shall maintain, manage and operate the Property in the customary course of business (including performance under any Operating Agreement), and shall maintain the Property in substantially the same physical condition as on the date of Seller's execution of this Agreement, ordinary wear

and tear excepted; and (B) perform Seller's obligations as landlord pursuant to the Leases.

(ii) _Employees_.  Seller shall not hire any employees with respect to the ownership, maintenance, repair, use, operation or enjoyment of Property whose employment is not terminable by Seller without penalty, payment or expense, at or prior to Closing.

(iii) _Operating Agreements_.  If Seller wishes to enter into any new Operating Agreement, or extend, modify or renew any existing Operating Agreements, Seller shall provide written notice to Purchaser.  Upon such notice, Purchaser will have five (5) business days to provide Seller with notice of Purchaser's objections, if any, in which case, the Seller shall have no right to enter into such new or modified Operating Agreement; otherwise Purchaser will waive its right to object.

(b) _No Survival_.  The obligations contained in this Section will not survive the Closing.

14.  **Notices.**  All notices, consents, approvals and other communications by either Seller or Purchaser under this Agreement will be properly given only if made in writing (except as expressly provided to the contrary in this Agreement) and sent to the addresses below by: (i) U.S. Certified Mail, Return Receipt Requested, or (ii) a nationally recognized overnight delivery service; or at such other address as each party may request in writing.  Such notices will be deemed received: (x) if delivered by overnight delivery service, on the date of delivery, or (z) if sent by certified mail, two business days after mailing.

_If to Seller:_            Fishbein Family, LLC
                          685 Liberty Avenue
                          Union, New Jersey  07083

with copy to:             Price, Meese, Shulman & D'Arminio, P.C.
                          50 Tice Boulevard – 3rd Floor
                          Woodcliff Lake, NJ  07677
                          Attn: Michael K. Breen, Esq.


_If to Purchaser:_        Lusardi Group, LLC
                          1075 Garden State Road
                          Union, New Jersey 07083

with copy to:             Ansell Grimm & Aaron, P.C.
                          1500 Lawrence Avenue, CN 7807
                          Ocean Township, New Jersey 07712
                          Attn: Michael V. Benedetto, Esq.

15. **Casualty and Condemnation**. (a) Casualty. If, prior to the Closing Date, any material part of the Property is damaged or destroyed by fire or other casualty, Seller shall notify Purchaser and the Closing Date may be extended, as applicable, as follows. In such event, Seller may: (i) cause the repair of such damage by a contractor selected by Seller and approved by Purchaser (which approval Purchaser shall not be unreasonably withhold), and thereafter proceed to Closing, without any reduction in the Purchase Price; (ii) provide the Purchaser with an assignment of all money received or receivable under any insurance policies up to the Purchase Price, without any reduction in the Purchase Price; or (iii) credit the cost of repair against the Purchase Price. If such damage or destruction costs in excess of $250,000.00 to repair, then (x) Seller shall send Purchaser notice of such cost within forty-five (45) days of the event of fire or casualty ("Cost Notice"), and (y) notwithstanding the foregoing sentence, either party may terminate this Agreement upon written notice delivered to the other party within ten (10) days after Purchaser's receipt of the Cost Notice; whereupon Seller (or Escrow Agent, as the case may be) shall refund the Deposit to Purchaser. If neither party exercises this option to terminate this Agreement, the parties shall proceed to the Closing pursuant to the terms hereof.

(b) Condemnation. In the event any proceedings or negotiations are instituted which do or may result in a taking by condemnation or eminent domain of the Property, Seller, upon obtaining knowledge thereof, shall promptly notify Purchaser, describing the nature and extent thereof. If Purchaser determines in good faith that such taking will interfere with its use of the Property or hinder Purchaser's ability to finance the Property, then Purchaser, at its election, may within thirty (30) days after receipt of notice of such taking, terminate this Agreement by written notice to Seller, whereupon neither party shall have any further rights hereunder and the Deposit shall be returned to Purchaser. In the event this Agreement is not so terminated, then the sale of the Property shall be consummated as herein provided and Purchaser shall be entitled to all awards paid or payable to Seller by reason of such taking.

16. **Brokers**. Seller and Purchaser represent that they have not dealt with any broker, finder or agent in connection with this transaction except for Bussel Realty ("Bussel") and PRE Real Estate Services, LLC ("PRE"). Seller and Purchaser shall each indemnify and hold harmless the other against any and all claims, demands, causes of action, losses, costs and expenses (including legal fees and expenses) resulting from any inaccuracy of the foregoing representation caused by the indemnifying party. Seller shall pay Bussel a commission pursuant to the terms of a separate agreement, it being the intention of the parties that PRE receive a commission from Bussel pursuant to the terms of a separate agreement between Bussel and PRE.

17. **Default and Remedies**.

(a) Seller's Default/Purchaser's Remedies. If Seller fails to sell the Property to Purchaser in accordance with this Agreement, or breaches in any material respect any of its duties, obligations, representations or warranties contained in this Agreement, or fails or is unable to deliver any of the documents required to be delivered by Seller hereunder, Purchaser may either (i) terminate this Agreement and receive a refund of the Deposit and reimbursement for all of Purchaser's documented third party expenses incurred in connection with Purchaser's Inspections and its reasonable attorney fees incurred herein; or (ii) seek specific performance. In the event Purchaser seeks specific performance and is successful, Purchaser shall be entitled to a

credit for all reasonable costs and expenses incurred in such pursuit.

(b) Purchaser's Default/Seller's Remedies. If Purchaser fails to purchase the Property on the Closing Date in accordance with the terms hereof, or otherwise breaches this Agreement in any material respect, then Seller may retain the Deposit as liquidated damages as its sole and exclusive remedy. Purchaser and Seller acknowledge and agree that damages which would be sustained by Seller in the event of a breach by Purchaser of its obligations under this Agreement are difficult to determine and, in such event that the Deposit represents a reasonable estimate of such damages and is not intended as a penalty. Notwithstanding the foregoing, if Purchaser fails to purchase the Property on the Closing Date in accordance with the terms hereof, or otherwise breaches this Agreement in any material respect, and:(a) the Deposit has not been released to Seller within thirty (30) days after the date of breach or Closing Date, whichever occurred first; and (b) Purchaser and/or Seller has not instituted a good-faith action seeking to enforce the terms of this Agreement, Seller may seek such other remedies as set forth herein. It being the intent of the foregoing provision that in the event Seller suffers additional damages as a result of Purchaser's delay in the release of the Deposit, Seller shall be entitled to any accretive damages beyond the Deposit should Seller be the prevailing party in such suit.

18. Assignment. Purchaser shall not assign this Agreement without the prior written consent of the Seller, which the Seller may withhold in its sole and absolute discretion. Notwithstanding the foregoing, Purchaser may assign this Agreement on notice to but without the consent of Seller to a Permitted Assignee.

19. Purchaser's Representations & Post-Closing Indemnity. (a) As an inducement to Seller to enter into this Agreement, Purchaser represents that: (i) Purchaser has the authority to enter into this Agreement and to consummate the transactions herein contemplated, and the execution and delivery hereof and the performance by Purchaser of its obligations hereunder will not violate or constitute a breach of the terms or provisions of any agreement, document or other instrument to which Purchaser is a party or by which it is bound; (ii) the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated herein will not violate any Legal Requirement which Purchaser is subject, or violate any judgment, order, writ, injunction or decree of any court applicable to Purchaser; and (iii) Purchaser has the financial ability to fulfill its obligations pursuant to this Agreement.

(b) Purchaser (i) represents that the foregoing representations are true, accurate and complete and not misleading in any material respect as of the date hereof, and (ii) agrees that such representations will be deemed repeated at and as of the Closing Date.

(c) Purchaser shall defend, indemnify and hold harmless Seller, any and all of its principals, and their respective agents, heirs, executors, administrators, successors and assignees, from any and all claims, demands, liabilities, damages, judgments, orders, decrees, actions, proceedings, fines, penalties, costs and expenses, including without limitation, court costs and attorneys' fees, relating to the Property and arising after the Closing Date, including without limitation (i) claims arising due to maintenance, structural repairs, replacements, or improvements required or advisable with respect to the Property, and (ii) all claims in any way related to or arising from the discharge of any contaminants as defined or referred to in any

Page 11 of 15

Environmental Laws, except as to any matter or circumstance regarding the Property which was actually known to Seller or its officers and employees prior to the Closing and not documented in writing to Purchaser prior to the Closing. Seller shall defend, indemnify and hold harmless Purchaser, any and all of its principals, and their respective agents, heirs, executors, administrators, successors and assignees, from any and all claims, demands, liabilities, damages, judgments, orders, decrees, actions, proceedings, fines, penalties, costs and expenses, including without limitation, court costs and attorneys' fees, relating to the Property and arising before the Closing Date to the same extent. The foregoing indemnity will survive the Closing.

20. **Bankruptcy.** Purchaser and Seller acknowledge that Seller is currently a debtor in possession of the Property pursuant to 11 U.S.C. 1101, *et seq.* (the "Bankruptcy"), and the sale of the Property contemplated by this Agreement requires a court order approving same ("Bankruptcy Court Approval"). Promptly after the Effective Date, and in any event no later than three (3) business days, Seller shall make application for Bankruptcy Court Approval. Seller shall seek Bankruptcy Court Approval pursuant to a private sale application which shall be subject to higher and better bids. The application for Bankruptcy Court Approval shall provide for the following: (i) a break-up fee to Purchaser in the amount of $75,000 (subject to Bankruptcy Court Approval), which break-up fee shall be paid from the proceeds of sale to a third-party other than the Purchaser; (ii) a minimum over-bid in an amount of $3,100,000; (iii) a provision that no credit bidding shall be permitted; and (iv) to the extent that the net proceeds of sale are insufficient to satisfy any and all liens against the Property, the Property shall be transferred to Purchaser free and clear of such liens and the liens shall attach to the proceeds of sale. The form and substance of the application and order sought for Bankruptcy Court Approval shall be reasonable acceptable to Purchaser's counsel. In the event that the Bankruptcy Court Approval is not obtained, or the contract is awarded to another party, the Deposit shall be promptly refunded to Purchaser.

21. **IRS Section 1031.** Purchaser reserves the right to complete the transaction contemplated by this Agreement as part of a "Tax Free Exchange" pursuant to I.R.C. Section 1031. Accordingly, Seller shall cooperate with Purchaser in executing such assignments, consents and other forms of documentation as may reasonably be required by Purchaser. Conversely, should Seller elect to effectuate the acquisition of title as part of a Section 1031 Tax Free Exchange, Purchaser agrees to cooperate with Seller in executing such assignments, consents and other forms of documentation as may be reasonably required by Seller.

22. **BULK SALES COMPLIANCE.** Purchaser shall have the right to comply with the applicable provisions of state law with respect to bulk sales, including, but not limited to N.J.S.A. 54:32B-22(c) and N.J.S.A. 54:50-38, and Seller shall cooperate in connection with such compliance. In furtherance thereof, Purchaser may deliver a Notification of Sale, Transfer, or Assignment in Bulk (Form C9600), together with a fully executed copy of this Agreement (the "Tax Notification") to the New Jersey Division of Taxation (the "Division") by registered or certified mail or overnight delivery so that the Tax Notification is received by the Division not less than fifteen (15) days prior to Closing. Seller shall provide all information requested by Purchaser to enable Purchaser to complete the Tax Notification as soon as practicable. Further, Seller, at its option, may prepare and deliver to Purchaser the Asset Transfer Tax Declaration Form TTD in the form prescribed by the Division. If, at any time prior to Closing, the Division

informs Purchaser that a possible claim (the "Claim") for taxes of any nature imposed or to be imposed on Seller, including any interest or penalties thereon, any cost or fees imposed by the Division related thereto and any tax on the gain from the sale of the Property (collectively, "Taxes"), exists and the amount thereof (the "Deficiency"), then Purchaser and Seller shall close as scheduled and without delay, and Purchaser shall withhold the portion of the Purchase Price equal to the amount of the Deficiency, which amount so withheld shall be placed in an escrow account (the "Tax Escrow"), which Tax Escrow shall be held by the Tax Escrow Agent who shall be Buyer's attorney ("Tax Escrow Agent"). If, after Closing, the Division or Seller requests that Purchaser pay all or any portion of the Deficiency on behalf of Seller, then Purchaser shall direct Tax Escrow Agent to, and Tax Escrow Agent shall, promptly release to the Division of Taxation such amount from the Tax Escrow. If the Director informs Purchaser that the Deficiency has been fully paid or that Purchaser has no further liability for the Deficiency, then Purchaser shall direct the Tax Escrow Agent to, and Tax Escrow Agent shall, promptly release such difference to Seller. If the Director gives notice to Purchaser that Seller is liable for Taxes in an amount that is greater than the Tax Escrow, Seller shall promptly pay the difference to the Division of Taxation and shall provide Purchaser with evidence of such payment.

23. **General Provisions.**

(a) Agreement Binding. This Agreement is binding upon each party hereto and such party's heirs, legal representatives, successors and permitted assigns.

(b) Governing Law. The laws of the state of New Jersey govern all matters arising out of this Agreement without regard to conflicts of laws principles.

(c) Further Assurances. Seller and Purchaser each agree to execute and deliver to the other such further documents or instruments as may be reasonable and necessary in furtherance of the performance of the terms, covenants and conditions of this Agreement.

(d) Non-waiver. Neither party shall deem the other to have waived any provision hereof unless such waiver is expressed in writing and signed by such waiving party.

(e) Attorneys Fees. In the event of any controversy, claim or dispute between the parties arising from or relating to this Agreement (including, but not limited to, the enforcement of any indemnity provisions), the prevailing party will be entitled to recover reasonable costs, expenses and attorneys' fees.

(f) Recordation. Neither party shall record this Agreement.

(g) Construction of Agreement. The parties hereto agree that the terms and language of this Agreement were the result of negotiations between the parties and, as a result, there will be no presumption that ambiguities, if any, in this Agreement are to be resolved against any party. Any controversy over the construction of this Agreement will be decided neutrally, in light of its conciliatory purposes, and without regard to authorship or negotiation.

(h) Modification of Agreement. This Agreement may not be amended or

modified, nor may any obligation hereunder be waived orally, and no such amendment, modification or waiver will be effective for any purpose unless it is in writing and signed by the party against whom enforcement thereof is sought.

(i) <u>Severability</u>. If any term or provision of this Agreement or any amendments hereto shall be found to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

(j) <u>Counterpart Signatures</u>. The parties may execute this Agreement in multiple counterparts, each of which will constitute an original, but all of which will constitute one and the same document. Faxed signatures will have the same binding effect as original signatures.

*[signature page follows]*

The parties are signing this Agreement on the date stated in the introductory clause.

FISHBEIN FAMILY, LLC

By: _____
Iris E. Buchman, Managing Member

*I. Buchman managing member*

LUSARDI GROUP, LLC

By: _____

Name: *Donald Lusardi jr*

Title: *President*

Escrow Agent:
PRICE, MEESE, SHULMAN & D'ARMINIO, P.C.

By: _____

Name: *Michael K. Breen*

Title: *Authorized Signatory*

# EXHIBIT "B"

# BUSSEL REALTY CORPORATION

2 Ethel Road, Suite 202A, Edison, NJ  08817
P (732) 287-3777 - F (732) 287-1090 - www.bussel.com

February 24, 2012

Brian W. Hofmeister, Esq.
691 State Highway 33
Trenton, NJ  08619

**RE:    50 Industrial Road, Berkeley Heights, New Jersey**

Dear Brian:

As per our telephone conversation here is a brief marketing and activity report on the above referenced property.

Bussel Realty Corp. was retained as Exclusive Broker to market the facility on December 22, 2010 for the Fishbein Family Partnership.

The property was listed for sale at $65.00 per square foot and $4.75 per square foot for lease.

There was a lot of activity on the property with two or three showings a week for the first four months. The offers ranged from $2,400,000.00 ($46.37 PSF) to $2,794,608.00 ($54.00 PSF) on a sale and $3.00 per square foot to $3.50 per square foot on a lease.  A number of lease opportunities had some risks associated with the tenant's financial ability to pay rent.  I have included these proposals to help substantiate the property value.

The present condition of the building requires a new roof which would cost $250,000.00 and the office space needs to be reconditioned at a cost of $150,000.00 to $200,000.00.  This added expense would not increase the value of the property dollar for dollar and it benefits the seller to have the new owner take on this capital cost.

The current contract with Donald Lusarpi, Jr., is at $2,950,000.00 ($57.00 PSF).  There are no other offers to purchase or lease currently on the building and any interest from previous offers have been withdrawn.

The buyer is prepared to close on this facility because it meets his real estate requirement of remaining in close proximity to his current location, the extra land for truck parking and the need to close by the end of the second quarter of 2012.

Similar buildings in Middlesex and Union Counties are selling in the $50.00 - $55.00 per square foot range which would put a value of $2,587,500.00 - $2,850,000.00 for 50 Industrial Road, Berkeley Heights.  New owners can expect some capital cost in the neighborhood of $2.00 to $3.00 per square foot.  In this case, the new owners will have to spend $9.00 - $10.00 per square foot to put the building in operation.  This was also part of the problem the landlord had in leasing to the new tenants and the landlord's outlay of approximately $450,000.00 to get them into the building.

The information herein has been obtained from sources deemed to be reliable, but no guarantee of its accuracy is made by the Company.  In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any matters of a legal or environmental nature.  Such matters should be referred to legal counsel for determination.  Subject to errors, omissions or withdrawal without notice.

# BUSSEL REALTY CORPORATION

2 Ethel Road, Suite 202A, Edison, NJ  08817
P (732) 287-3777 - F (732) 287-1090 - www.bussel.com

Page 2, Brian W. Hofmeister, Esq.

If you need additional evaluation paperwork, comps or would like to discuss in more detail the value of this property, please do not hesitate to call.

Very Truly Yours,
**BUSSEL REALTY CORP.**

Gregory S. Irving, SIOR
Executive Vice President

Enclosure

12GSI/cc

The information herein has been obtained from sources deemed to be reliable, but no guarantee of its accuracy is made by the Company.  In addition,
no representation is made respecting measurements, dimensions, zoning, condition of title or any matters of a legal or environmental nature.  Such matters
should be referred to legal counsel for determination.  Subject to errors, omissions or withdrawal without notice.

# BUSSEL REALTY CORPORATION

2 Ethel Road, Suite 202A, Edison, NJ  08817
P (732) 287-3777 - F (732) 287-1090 - www.bussel.com

January 7, 2011

Mr. Jeffrey Buchman
**FISHBEIN FAMILY PARTNERSHIP, LLC.**
2520 Polk Street
Union, NJ  07083

**RE:    50 Industrial Road, Berkeley Heights, NJ**

Dear Jeff:

I have been authorized by my customer, Mr. Roy Symington of The Eagle Group, to present the following offer on the above referenced property under the following terms and conditions.

| | |
|---|---|
| Price: | $2,400,000.00 |
| Terms: | Cash or seller financing of $1,200,000 at six (6%) percent with a twenty (20) year amortization for five (5) years. |
| Closing: | Thirty (30) days after due diligence |
| Subject To: | 1)    Satisfactory ISRA inspection and documentation. |
| | 2)    Satisfactory engineering report to be paid for by the buyer. |
| | 3)    Buyer will have thirty (30) days to perform their due diligence on the property. |

This offer is not to be construed as a legally binding agreement between the parties.  Neither party shall have any legally enforceable claim against the other unless and until a formal Purchase and Sale Agreement has been executed by and delivered to both parties.

Should you require any additional information, please do not hesitate to call.

Very Truly Yours,
**BUSSEL REALTY CORP.**

Gregory S. Irving, SIOR
Executive Vice President

cc:    David Blitt
11GSI/lr

---

The information herein has been obtained from sources deemed to be reliable, but no guarantee of its accuracy is made by the Company.  In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any matters of a legal or environmental nature.  Such matters should be referred to legal counsel for determination.  Subject to errors, omissions or withdrawal without notice.



# GULF AMERICAN LINES

330 Snyder Avenue
Berkeley Heights, N.J. 07922
(908) 464-3366 • Fax (908) 464-6218
Web Site: www.gulfamerican.com
E-Mail: ship@gulfamerican.com

January 21, 2011

Mr. David H. Blitt
Senior Vice President
BUSSEL REALTY CORP.
2 Ethel Road, Suite 202A
Edison, NJ 08817

*RE:     50 Industrial Road, Berkeley Heights      +/- 51,752 SF (footprint)  on 2.87 Acres*

Dear David:

This letter shall serve to confirm that I authorize you to exclusively represent Gulf American Line, our related companies, successors and assigns to negotiate with the owner on our behalf for the purchase of the above referenced property.  We are willing to purchase the property under the following terms and conditions;

| | |
|---|---|
| PURCHASE PRICE: | $2,794,608.00      (+/- $54/ SF) |
| DUE DILIGENCE: | Purchaser shall have a period of 80 days to obtain satisfactory structural and environmental engineering reports and to obtain a 75% mortgage commitment at conventional terms and rates. |
| GOOD FAITH DEPOSIT: | $100,000.00 |
| CLOSING: | On or around April 1, 2011 – or sooner if possible. |

We are serious and capable buyers and look forward to the owners timely and favorable response.


**GULF AMERICAN LINE**

Mr. Shawn Singer
Executive Vice President

**The Blau & Berg Company**

COMMERCIAL/INDUSTRIAL/OFFICE REAL ESTATE SERVICES
140 Mountain Avenue, Suite 204, Springfield, NJ 07081
(973) 379-6644  (908) 276-3355  FAX (973) 379-1616
www.blauberg.com • blaubergco@blauberg.com
*Providing Corporate Real Estate Services Since 1932*

January 26th, 2011

**VIA EMAIL: Irvingge@aol.com and Dblitt@bussel.com**
Mr. Gregory Irving & David Blitt
Bussel Realty Corporation
2 Ethel Road, Suite 202A
Edison, NJ 08817

Re:    **Approximately 51,752 SF**
       **50 Industrial; Road, Berkley Heights, NJ**

Gentlemen:

This letter will serve as our client's intent to purchase the above-captioned property subject to the following terms and conditions:

| | |
|---|---|
| Demised Premises: | ±51,752 SF |
| Tenant: | Tyler Transportation or assigns |
| Purchase Price: | $53 PSF or $2,742,856 |
| Purchase Deposit: | Five (5%) percent at contract signing |
| Due Diligence: | Ninety (90) days |
| Closing: | Thirty (30) days |
| Contingent Upon: | |

- All local, state and federal environmental regulations to be satisfactory to Buyer
- Primary financing and market appraisal of facility

Brokerage Commission:    5% to be paid to The Blau & Berg Company by seller at time of closing

If the above meets with ownership approval, please have a purchase and sale agreement drawn incorporating the same for attorney review. This proposal is intended merely as a preliminary expression of general intentions. The parties mutually intend that neither shall have any binding contractual obligation to the other with respect to the matters referenced herein unless and until a formal written contract has been prepared with adequate opportunity to be reviewed by legal counsel and has been fully executed and delivered by the parties.

Sincerely,

THE BLAU & BERG COMPANY

Jason M. Crimmins, CCIM, SIOR
Executive Vice President

cc:    Kenneth F. Crimmins, CCIM, SIOR
       Peter J. Murano, Jr.

    

The information contained herein has been obtained from sources considered to be reliable, but no guarantee of its accuracy is made by this company. In addition, no representation is made respecting zoning condition of title, measurements, dimensions, or any matters of a legal or environmental nature. Such matters should be referred to legal counsel for determination. Subject to errors, omissions or withdrawal without notice.

**CBRE**
CB RICHARD ELLIS

**Timothy J. Cadigan**

CB Richard Ellis, Inc.
Brokerage Services

100 Campus Drive
Suite 109
Florham Park, NJ 07932

973 437-2029 Tel
732 320-5210 Cell

timothy.cadigan@cbre.com
www.cbre.com

March 8, 2011

Mr. David Blitt
**Bussel Realty Corp.**
2 Ethel Rd.
Suite 202A
Edison, NJ 08817

Re:     **50 Industrial Rd. Berkeley Heights, NJ 07922**

Dear David:

We appreciate your last proposal.  I have been authorized by my client, All Sports Inc. ("Tenant") to
submit the following counter proposal for the above captioned premises.

| | | |
|---|---|---|
| 1. | **Building:** | 50 Industrial Rd. Berkeley Heights, NJ |
| 2. | **Tenant:** | All Sports, Inc. |
| 3. | **Landlord:** | The Fishbein Family Partnership |
| 4. | **Premises:** | 51,752 square feet tenant/buyer retains the right to independently verify. |
| 5. | **Possession:** | On or about September 1, 2011 or the later of the issuance of the Certificate of Occupancy and Tenant's occupancy of the premises. |
| 6. | **Use:** | Tenant will operate a recreational facility as depicted in attached business plan. |
| 7. | **Rent Commencement:** | 6 months after possession. |
| 8. | **Term:** | Ten (10) year lease. |
| 9. | **Rental Rate:** | Months 1 -6:    $0 tenant will pay tax and CAM during this time.<br>Months 7-18:   $3.25 net per square foot.<br>Months 19-30:  $3.50 net per square foot.<br>Months 31-42:  $4.00 net per square foot.<br>Months 43-78:  $4.25 net per square foot.<br>Months 79-126: 2% increases over previous years rent. |
| 10. | **Purchase Option:** | Tenant shall have the right to purchase the building during the lease term for $59 per square foot with 3 months written notice.  Every 12 month period from possession date shall add 2% to the purchase price. |

Mr. Timothy Cadigan
CB Richard Ellis
Page 2

**11.   Landlord's work:**   Tenant will require landlord to do the following:
Option A:
- Match Tenant's investment into the facility up to $300,000, excluding costs to repair roof, structure or existing lighting.

Option B:

1. Demo downstairs office except bathrooms.
2. Refurbish both up and downstairs bathrooms and make them ADA compliant.
3. Create a locker room area on the northeast corner of the building from the bathrooms to the northeast wall.
4. Repaint and carpet upstairs offices and replace any doors, ceiling tiles as needed.
5. Remove and fill current dock levelers on the southwest of the building.
6. Remove offices along the south wall.
7. Add an additional ADA compliant double glass entry door on the south wall with small foyer area and door into the warehouse as a weather buffer.
8. Repair/replace existing roof.
9. Powerwash exterior of the building.
10. Stripe parking lot for cars as per town requirements.
11. Repair exterior wall on East side of the building.

**12.   Tenant's work:**

1. Tenant will remove the second row of columns on the west section of the building creating approximately a 90' x 180' column free section. This will be accomplished by adding an external support structure in compliance with town code/permits/approvals as well as landlord approval.
2. Tenant will add synthetic turf as desired.
3. Tenant will retain the right to modify the building for it's use with landlord approval. Conceptual plans can be provided.

**13.   Real Estate Tax and Operating Expenses:**   Tenant/buyer shall be responsible real estate taxes and CAM during the lease term.

**14.   Work to be done by Landlord:**

1. Deliver premises in good broom swept condition with all mechanicals, in good working order and a roof free of leaks.
2. All Lighting in office and warehouse to be in good working order.
3. All loading doors to be in good working order.
4. All electrical, mechanical and plumbing to be in good working order.

**15.   Sub-lease Rights:**   Tenant/buyer shall have the right to sub-lease any portion of the space with Landlord's written consent which shall not be unreasonably withheld.

Mr. Timothy Cadigan
CB Richard Ellis
Page 3

| | | |
|---|---|---|
| **16.** | **Security Deposit:** | To be determined. |
| **17.** | **Brokerage:** | Landlord shall enter into a separate agreement to pay CB Richard Ellis, Inc. a brokerage commission for this transaction. The commission shall be calculated at five (5%) percent of the aggregate net rent. This agreement shall also include a provision for commission payment for Tenant's options, expansions, and renewals. If purchase option is exercised the commission will be calculated at two and a half percent (2.5%) of the purchase price. |
| **18.** | **Proposal Subject To:** | 1. Building to be in full compliance with all local, state and federal codes and ordinances.<br>2. Landlord responsible for all structural , roof repairs throughout the lease term not caused by Tenant's negligence.<br>3. Formal leases acceptable to Tenant's legal counsel.<br>4. Tenant obtaining a certificate of occupancy for its use and all relate approvals for the structural work.<br>5. Landlord complying with ISRA and all necessary environmental regulations.<br>6. To the best of Landlord's knowledge, Landlord/owner represents that the premises are not situated within a flood zone. |

*This proposal is intended solely as a preliminary expression of general intentions and is to be used for discussion purposes only. The parties intend that neither shall have any contractual obligations to the other with respect to the matters referred herein unless and until a definitive agreement has been fully executed and delivered by the parties. The parties agree that this proposal is not intended to create any agreement or obligation by either party to negotiate a definitive lease agreement and imposes no duty whatsoever on either party to continue negotiations, including without limitation any obligation to negotiate in good faith or in any way other than at arm's length. Prior to delivery of a definitive executed agreement, and without any liability to the other party, either party may (1) propose different terms from those summarized herein, (2) enter into negotiations with other parties and/or (3) unilaterally terminate all negotiations with the other party hereto.*

Sincerely,
**CB Richard Ellis Inc.**


Timothy J. Cadigan

AGREED AND ACCEPTED:

By: _____          By: _____

    The Fishbein Family Partnership          All Sports, Inc.

Title:_____        Title:_____
Date:_____        Date:_____

# *Bussel Realty Corp.*

*2 Ethel Road, Suite 202, Edison, NJ  08817*
*Ph - 732-287-3777 / Fx: (732) 287-1090 / www.bussel.com*

March 18, 2011

Mr. Timothy J. Cadigan
**CB RICHARD ELLIS, INC.**
100 Campus Drive, Suite 109
Florham Park, NJ 07932

RE:    50 Industrial Road, Berkeley Heights, NJ    +/- 51,742 SF

Dear Tim:

Thank you for your detailed offer for my above referenced exclusive listing.  The owner has requested that I respond to your customer's proposal with the following basic concerns.  If these can be satisfactorily addressed by your customer the owner would then be prepared to work through the remainder of the proposal.

The major concerns are  (1) The entity proposing to lease the building is a "start up" company with limited assets. There is a substantial risk with the free rental period.  Maybe we can make everyone comfortable with personal guarantees and / or letters of credit.  (2) The owner will need to invest a certain amount of money for any tenant but would be generating a return on that investment fairly shortly after the improvements are made to the property. (3) The deal your customer is proposing requires tenant specific improvements that don't necessarily improve the utility of the property for the next user. In the event the business is not successful the improvements made by the tenant could be detrimental to the value of the property. (4) The approvals for the use permits from the Township could take a substantial period of time during which the building will not be generating any income.

We look forward to yours and your customer's thoughts on these concerns.

Please do not hesitate to call me if you have any questions.

Very Truly Yours,
**BUSSEL REALTY CORPORATION**


David H. Blitt
Senior Vice President

CC: Greg Irving

The information herein has been obtained from sources contained to be reliable, but no guarantee of its accuracy is made by the Company.  In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any  matters of a legal or environmental nature. Such  matters should be deferred to legal counsel for determination. Subject to errors, omissions or withdrawal without notice.

# Bussel Realty Corp.

2 Ethel Road, Suite 202, Edison, NJ 08817
Ph - 732-287-3777 / Fx: (732) 287-1090 / www.bussel.com

March 22, 2011

Mr. Shawn Singer
**GULF AMERICAN LINE**
330 Snyder Avenue
Berkeley Heights, NJ 07922

*RE:    50 Industrial Road, Berkeley Heights  +/- 51,752 SF (footprint)  on 2.87 Acres*

Dear Shawn:

Please accept our apologies for the delay in this response.  I have had several discussions with the owner of the above referenced property about your interest in purchasing his above referenced property and your previous purchase offer. He appreciates your efforts in obtaining information on the roof condition, understands that you are serious buyers and has authorized me to present to you the following proposal that would be acceptable to his family partnership:

| | | |
|---|---|---|
| **SALE PRICE:** | $3,000,000.00 | (+/- $58 / SF) |

**DUE DILIGENCE:**    Purchaser shall have a period of 45 days to obtain satisfactory structural and environmental engineering reports and to obtain a 75% mortgage commitment at conventional terms and rates.  The purchaser understands the building's roof is near the end of it's useful life and is accepting this as a condition of the sale.

**GOOD FAITH DEPOSIT:**    $100,000.00

**CLOSING:**    On or around June 1, 2011

If this proposal is acceptable to you, Mr. Buchman's attorney will have contract of sale prepared for your review.  We look forward to your favorable reply.

Please do not hesitate to call me if you have any questions.

Very Truly Yours,
**BUSSEL REALTY CORPORATION**


David H. Blitt
Senior Vice President

CC: Greg Irving

The information herein has been obtained from sources contained to be reliable, but no guarantee of its accuracy is made by the Company.  In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any  matters of a legal or environmental nature. Such  matters should be deferred to legal counsel for determination.  Subject to errors, omissions or withdrawal without notice.

# *Bussel Realty Corp.*

*2 Ethel Road, Suite 202, Edison, NJ  08817*
*Ph - 732-287-3777 / Fx: (732) 287-1090 / www.bussel.com*

May 9, 2011

Mr. Larry Lerman
Principal
**LERMAN SANDERS REALTY CORP.**
41 Vreeland Avenue
Totowa, NJ 07512

RE:    *50 Industrial Road, Berkeley Heights, NJ     +/- 51,742 SF*
       *Rush Printing & Binding Inc.*

Dear Larry:

It was a pleasure meeting with you and your customer Mr. Jay Cohen last week at the above referenced property.  The owner and I have discussed Jay's requirement and are interested in pursuing a deal with him. We ask that you present to Jay the following lease proposal:

**TERM:**                        10 years with the option to renew for an additional five years.

**POSSESSION:**             September 1, 2011.  As and when possible Tenant may have building access (July 1) to begin fit-up.  Tenant shall be responsible for the real estate Taxes and CAM's for the "free rental" period September and October.

**RENT COMMENCEMENT:**   November 1, 2011

**USE:**                        Offices, Printing and related process's as permitted by the Township.

**RENTAL SCHEDULE:**       Year 1                  $3.50 / SF net
                            Year's 2 & 3            $3.75 / SF net
                            Year's 4 & 5            $4.00 / SF net
                            Year's 6 & 7            $4.25 / SF net
                            Year's 8,9 & 10         $4.65 / SF net
                            $4.145 Average over the 10 year period.

**SECURITY DEPOSIT:**       Subject to receipt and review of Tenant's financial statements.

**BROKERAGE:**              Lerman and Sanders Realty Corp. shall receive a 5% commission. This shall be addressed in a separate letter.

Pg2-50Industr/RushPrint5-2--11

**LANDLORD'S WORK:**

(1) Landlord shall replace the roof and deliver the building in good and dry condition. The roof and building structure will remain the landlord's responsibility for the term of the lease.
(2) ½ of the first and second floor offices shall have the partitioning removed to allow for light processing. The open areas and the remaining offices shall be cleaned up, re-carpeted or tiled, repainted and the lights, and ceiling tiles replaced. The bathrooms will be cleaned and put into good condition. Floor load of mezzanine is not known – we're working on determining it.
(3) The electrical service in the building is believed to be 1,200 Amps at 480 volts. This will be confirmed. It's highly recommended that the tenant determines the suitability of the existing power for their use.
(4) The warehouse floors will delivered in good, flat and clean condition.
(5) The warehouse walls will be painted.

Rush Printing & Binding Inc. shall be given the "right of first offer" to lease (if and when it becomes available) the building next door owned by the landlord. The present tenant in the adjacent building has +/- 3 years left on their lease. We look forward to your favorable response.

Please do not hesitate to call me if you have any questions.

Very Truly Yours,
**BUSSEL REALTY CORPORATION**

David H. Blitt
Senior Vice President

CC: Greg Irving

The information herein has been obtained from sources contained to be reliable, but no guarantee of its accuracy is made by the Company. In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any matters of a legal or environmental nature. Such matters should be deferred to legal counsel for determination. Subject to errors, omissions or withdrawal without notice.

# PRE

PRE Real Estate Services, LLC

May 18, 2011

Mr. David Blitt
Senior Vice President
2 Ethel Road, Suite 202A
Edison, Nj 08817

**RE:**    **Letter of Intent**
**Proposed Purchase Property located at 50 Industrial Road, Berkeley Heights, NJ**

Dear David:

The following is our offer to purchase approximately 2.87 acres, containing an approximately 51,752 square foot industrial building, at the above referenced property on behalf of our clients under the following terms and conditions:

1. **Property to Purchase:**
   Please provide Block and Lot information for the property commonly known as 50 Industrial Road, Berkeley Heights, NJ.

2. **Owner:**
   Please identify the current Ownership Entity.

3. **Purchaser:**
   An entity to be formed D/B/A Liberty Transportation and Storage Company.

4. **Purchase Price:**
   Two Million Five-hundred and fifty thousand dollars ($2,550,000)

5. **Terms of Payment:**
   The purchase price including earnest money deposit, shall be paid in cash, wire transfer or credit funds at closing plus or minus any proration.

6. **Earnest Money:**
   Within five (5) business days after the date of the final execution and delivery of the Contract by both Seller and Buyer, Buyer shall deliver an earnest money deposit of Fifty-thousand, and no/100 dollars ($50,000.00) ("Earnest Money Deposit") to the title company ("Escrow") called for in the Contract.

7. **Closing Date:**
   The closing of the purchase of the Property shall take place within thirty (30) days after expiration of the Investigation/Due Diligence Period.

# PRE

PRE Real Estate Services, LLC

8. **Investigation/Due Diligence Period:**

Ninety (90) days after the execution date of the Contract ("Investigation/Due Diligence Period"), Buyer shall have the right, but not the obligation, to perform the following procedures:

| | |
|---|---|
| Physical | Inspect all physical aspects of the Property, including topography, drainage, etc. |
| Utilities | Establish that utilities are immediately on or adjoining the Property without any separation, division, or gap between the utilities and the Property from roadways or otherwise, and being adequate and available for hook up and connection for Buyer's proposed use. |
| Regulatory | Investigate all governmental zoning, codes, requirements, covenants and restrictions and receive approval of Buyer's proposed use from appropriate governing entities. |
| Environmental | Seller to provide a current Phase One on the Property within twenty one (21) days of execution date of Contract for Buyer's review. |
| Title | Seller to provide Preliminary Title Report within five (5) days of execution date of Contract for Buyer's review. |
| Financing | Buyer to obtain financing at rate and terms acceptable to Buyer. |
| Records | Seller covenants and agrees that they shall provide Buyer with access to, and copies of, all records in Seller's possession and control, relating to the Property. |

After such investigation, if Buyer, in their sole discretion, determines that the Property is not satisfactory for purchase by Buyer, then Buyer may terminate the Contract and earnest money shall be returned.

9. **Title and Survey:**

Seller will convey title to the Property, which is free and clear of all liens, defects and encumbrances. Seller shall provide, at their expense, a current ALTA survey and title insurance (including customary endorsements) issued by the Title Company in the amount of the purchase price.

# PRE

PRE Real Estate Services, LLC

10. **Brokerage:**

At closing Seller shall be responsible for payment of a reasonable and customary real estate commission, which shall be in conformance with a separate agreement between seller and PRE Real Estate Services. The parties warrant they know of no other broker(s) entitled to a commission with this transaction.

11. **Documentation:**

Within ten (10) working days after the acceptance of this letter of intent by Seller, Buyer shall execute a formal Purchase Contract for Seller's review, which will embody the terms and conditions of this letter and will govern the transaction.

This letter is intended only to express the interest of the parties to purchase and sell the Property, it being understood that it is not legally binding upon either Buyer or Seller, and that either party has the right to terminate discussions or negotiations for any reason prior to signing the Contract. Notwithstanding the foregoing, Seller herby agrees not to solicit, entertain or accept any formal or informal offers to purchase the Property, or any part thereof, until the first to occur of (i) mutual written revocation of this letter by both the Buyer and Seller; or (ii) disapproval of the purchase of the Property by Buyer during the Investigation/Due Diligence Period.

If the terms of this letter are acceptable to you, please execute the enclosed duplicate copy of this letter in the space below and return it to the undersigned and direct your attorneys to commence preparation of the Contract.

Sincerely,

Patrick R. Eichner
Broker of Record

ACKNOWLEDGED AND AGREED:

OWNER:   By: _____   Date: _____

BUYER:   By: _____   Date: _____

CC:   Donald Lusardi, Jr.
Michael V. Benedetto, Esq.



June 7, 20111

Mr. David Blitt
Senior Vice President
Bussel Realty Corp.
2 Ethel Road, Suite 202A
Edison, NJ 08817

**Re:**    *50 Industrial Road, Berkeley Heights, New Jersey, +/- 51,752 sq. ft. industrial building*

Dear David:

On behalf of Control, Inc., (Purchaser), including heirs, affiliates, or assigns, we have been given the authority to submit an offer for the above referenced property under the following terms and conditions.  If the following meets with the Seller's approval, please arrange for contracts of sale to be drawn for review by Purchaser's attorney.

| | |
|---|---|
| **Purchase Price:** | $2,401,293 ($46.40 psf) |
| **Mortgage Contingency:** | None. |
| **Initial Deposit:** | The initial deposit shall be five (5%) percent of the purchase price to be held in escrow in an interest bearing attorney trust account.  The deposit shall be payable at contract signing and shall be refundable subject to the terms and conditions listed below. |
| **Purchase Contract:** | Seller's attorney shall deliver Purchase Contract within ten (10) business days after a "meeting of the minds" between Purchaser and Seller with regard to business terms. |
| **Closing:** | Thirty (30) days after the completion of Due Diligence. |
| **Due Diligence:** | Purchaser requires Sixty (60) days from execution of a Contract of Sale to perform its satisfactory due diligence.  Seller agrees to provide any and all due diligence materials in its possession with regard to the environmental condition of the site ("materials"), and said Sixty (60) day period shall not commence until seller shall furnish and deliver of all materials for purchaser's review. |

Lee & Associates – New Jersey, LLC.  A member of the Lee & Associates Group of Companies
150 Clove Road, 6th Floor, Little Falls, NJ  07424 | T: 973.337.1144 | F: 888.267.3446 | www.lee-associates.com
Licensed Real Estate Broker

*Although all information forwarded regarding property for sale, lease or financing is from sources deemed reliable, no representation is made nor is any implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice.  No warranties or representations are made, nor are any implied as to the condition or construction of the property including any patent or latent conditions, or any hazards contained therein, nor any implied.*

*June 7, 2011*
*Control, Inc.*
*50 Industrial Road*
*Page 2 of 2*

This proposal shall be subject to the following:

1.  Seller's complete compliance with ISRA, and all other environmental regulatory compliance.

2.  Building to be delivered in broom swept condition and free of all debris, floor bolts, machinery etc.

3.  Due Diligence as stated above, including but not limited to Purchaser's satisfactory inspection of the building's structure, the roof and roof components, all mechanical systems and mechanical components, and purchaser's satisfactory environmental inspection.

4.  Clear and Marketable Title.

**Brokerage:**            Lee & Associates - New Jersey L.L.C. shall be paid a commission by the seller as per separate agreement.

This offer is intended solely as a preliminary expression of general intentions and is to be used for discussion purposes only.  The parties intend that neither shall have any contractual obligations to the other with respect to the matters referred herein unless and until a definitive agreement has been fully executed and delivered by the parties.  Prior to delivery of a definitive executed Purchase Agreement, and without liability to the other party, either party may propose different terms from those summarized herein and/or unilaterally terminate all negotiations with the other party hereto.

We look forward to your response.

Sincerely,

President / Principal

cc:     Rod Diplock
        John Diplock
        Terry Armstrong

Lee & Associates – New Jersey, LLC.  A member of the Lee & Associates Group of Companies
150 Clove Road, 6th Floor, Little Falls, NJ  07424 | T: 973.337.1144 | F: 888.267.3446 | www.lee-associates.com
Licensed Real Estate Broker

*Although all information forwarded regarding property for sale, lease or financing is from sources deemed reliable, no representation is made nor is any implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice.  No warranties or representations are made, nor are any implied as to the condition or construction of the property including any patent or latent conditions, or any hazards contained therein, nor any implied.*

# Bussel Realty Corp.

*2 Ethel Road, Suite 202, Edison, NJ 08817*
*Ph - 732-287-3777 / Fx: (732) 287-1090 / www.bussel.com*

June 20, 2011

Mr. Richard Marchisio
President / Principal
**LEE & ASSOCIATES – NJ, LLC.**
150 Clove Road, 6th Floor
Little Falls, NJ 07424

*RE:    50 Industrial Road, Berkeley Heights, NJ    +/- 51,742 SF // Control, Inc.*

Dear Rick:

Thank you for your June 7th purchase offer from your above customer.  The owner and I have discussed the proposal and $2,401,293 is not acceptable to him. He would prefer to lease but will consider a lease with a purchase option.  We ask that you have your customer consider the following proposal:

| | |
|---|---|
| **TERM:** | 5 years with the option to renew for an additional five years. |
| **OCCUPANCY:** | October 1, 2011 |
| **RENTAL SCHEDULE:** | Years 1 through 5    $4.25 / SF net<br>Year's 6 through 10    $4.75 / SF net (OPTION YEARS) |
| **PURCHASE OPTION:** | At the end of the 5 - year term and anytime during the 5 - year renewal, with 6 months notice the tenant shall have the right to purchase the building for "Fair Market Value". |
| **SECURITY DEPOSIT:** | Subject to receipt and review of Tenant's financial statements. |
| **LANDLORD'S WORK:** | Deliver the building broom clean with the roof free of leaks. |

Upon your customers acceptance of these terms the landlord will immediately prepare a lease for your customers review and execution. Please do not hesitate to call me if you have any questions.

Very Truly Yours,
**BUSSEL REALTY CORPORATION**

David H. Blitt
Senior Vice President

The information herein has been obtained from sources contained to be reliable, but no guarantee of its accuracy is made by the Company.  In addition, no representation is made respecting measurements, dimensions, zoning, condition of title or any matters of a legal or environmental nature.
Such  matters should be deferred to legal counsel for determination.  Subject to errors, omissions or withdrawal without notice.

# ROOF CORE ANALYSIS REPORT
## Entire Main Flat Roof

**TOTAL DEPTH TO DECK:**          **2.5** Inches

**ROOF DECK:**                        Steel

**INSULATION TYPE:**       __**PERLITE / FIBERBOARD**__

Thickness:  1.5 inches Perlite / .5 inch Fiberboard
Attachment:                Adhered
Condition:  Dry – Damp along outside perimeter
R-Value (Insulating Quality):       2 when dry – 0 when wet

**ROOF TYPE:**        __**ASPHALT BUILT UP ROOF SYSTEM**__

Thickness:       Two applications of .25 inches
Surfacing:            Aluminum coated
Condition:                Poor

**OVERALL CONDITION:** The overall condition of this roof is poor. Core samples indicate that there are two roof systems present which would require removal prior to the installation of a new roof system.

Also, there is a thick coating of aluminum on this roof which has a tendency to hide many of the problems that a roof in this condition may be experiencing. The fact that there is extensive leaking along the perimeter and the now the field of the roof would indicate that the coating acts as nothing more than a dressing and that this roof is at the end of its useful life.

In addition, there were areas through out the roof where the substrate was spongy. Without coring these areas, all of which had standing water on them, it can only be assumed the roof in those areas is wet. That would explain the ponds that sit on top of the deflections in the surface of the roof. More than likely these deflections are caused by wet roofing condensing.

Repairs usually can be made to stop the leaks as they occur. However, based on our visual inspection, a great deal of money would have to be spent on repairing the entire perimeter including encapsulating the existing cement coping. Even though a great deal of money would be spent, you would lose its value when a new roof is installed. The manufacturer of the new membrane would require all flashings be removed prior to the installation of the new roof.

Finally, as this roof continues to age, it allows water to infiltrate the surface. This water becomes trapped between the plies and might not manifest into a leak immediately. As this trapped water expands and contract with every temperature change, it literally can rip the old brittle membrane open. The problem is how do you determine where the next leak will come from?



Existing Conditions

Proposal

IPO Roof

Warranty/Insurance

# PFISTER Maintenance, Inc.

80 East Fifth Street
Paterson, New Jersey 07524
Tel:     973 569-9330
Fax:     973 569-9333
E-Mail: info@pfisterroofing.com

919 Highway 33, Unit 47
Freehold, New Jersey 07728
Tel:     732-780-8853
Fax:     732-780-8854
E-Mail: info@pfisterroofing.com



*VISIT OUR NEW WEBSITE:*
www.pfisterroofing.com

March 18, 2011

Attention: Ms. Jaletta Reames
Gulf American Line
30 Snyder Avenue
Berkley Heights, New Jersey

Dear Ms Reames,

At your request, we have inspected and evaluated the existing roof assembly designed to protect your building at the site listed below. In keeping with the criteria we have established, we offer the following proposal for your review and consideration.

## PROPOSAL

**Roof Location:**    50 Industrial Road
                      Berkley Heights, New Jersey

**Roof Size:**        50,576 square feet

**Roof Area:**        US Ink Offices and Lab

## RECOMMENDATIONS

REMOVAL

- We will **remove the entire roof assembly down to the deck**, disposing of all debris, according to DEP requirements. All generated debris will be cleaned up on a daily basis. Deck vibration may cause excessive dust during installation for which we cannot be held responsible. Protection of machinery, etc., by owner.



ROOFING INNOVATION SINCE 1889
FULLY BONDED & INSURED
New Jersey Department of Building & Construction Approved
Visit our Website at www.pfisterroofing.com
*Pfister Roofing offers employment opportunities in our sales,*
*service and safety departments.*

Est. 1889

### INSTALLATION OF INSULATION BOARD

- Over the prepared substrate we will install one layer of **2 inch polyisocyanurate roof insulation with an R of 12.** This insulation will be **fastened** according to the manufacturer's recommendations. All insulation boards will be tightly butted and staggered.

- All insulation boards will be kept free of debris and moisture during installation. The amount of insulation installed per day will be no more than can be covered during that same working day.

### MEMBRANE INSTALLATION

- Pfister Roofing will mechanically attach, **using the RhinoBond fastening system, GAF's .060 white Thermoplastic Polyolefin (TPO) membrane** in accordance with approved manufacturer's specifications.

- Encapsulate all penetrations in the vertical plane with the same membrane used in the horizontal plane.

- The membrane will be fully adhered to parapet walls.

### FLASHING AND DRAINS

- All HVAC equipment and penetrations will be flashed and counterflashed according to good roofing practices.

- Where applicable, HVAC units will be raised and new wood dunnage installed.

- Install new counter-flashing as required.

- The existing drains will be reused and flashed in accordance with approved manufacturer's specifications.

### EXTRAS

- Extras which are not a part of this contract will be charged at an hourly rate of $90.00 plus overhead, materials and profit.

### ROOF EDGE / METAL DETAIL

- **Perimeter walls and cement coping to be encapsulated with new TPO membrane and new metal edge will be installed.**

### QUALITY ASSURANCE

- All selected materials will comply with the specification issued by the manufacturer.

- We will install all materials and protect them from the elements wherever possible, keeping the entire facility orderly and clean at all times.

- Watertightness cannot be guaranteed 100 % at all times during installation. This is influenced by acts of God as well as transportation across the old roof during installation.

- Vibration of the roof due to tear off, or the installation of a new roof, may cause dust and / or improperly secured fixtures to fall from the underside of the roof structure. It is the owner's responsibility to safeguard and protect the areas beneath the roof. Pfister Industries will not be held responsible for any occurrences of fallen dirt and debris, as outlined above.

## SAFETY AND SECURITY

- All work will be conducted according to OSHA regulations and in-house safety practices.

## GUARANTEE

- Upon completion of outlined work and receipt of final payment, **Pfister Roofing will provide a 20 year Full System Warranty, including workmanship, from GAF Corporation.**

- On projects where there is a tear off, if asbestos material is found which was not detected at the time of roof evaluation or preparation of this proposal, the owner will bear the cost of removing the asbestos material according to DEP requirements.

## COST

- We will complete all of the above, including labor and materials, for the **sum of $296,000.00**:

- The above price **reflects all applicable permit and inspection fees.**

- **In an effort to prolong the useful life of your new roof, as recommended by the manufacturer that holds the warranty, Pfister Roofing will provide one year of Preventive Maintenance free of charge.**

- This estimate is based upon the square footage as noted at the beginning of our Proposal. Any errors and/or omissions made in this estimate may reflect a price deduct or add-on if it is determined that the actual square footage is different than noted in this Proposal.

- Our quote is good for 45 days due to the volatility of the membrane market.

## STANDARD PAYMENT TERMS

- Twenty-five percent of the total cost is due upon delivery of materials and start of job.

- Additional twenty-five percent of the total cost is due upon 50% completion.

- Payment in full upon completion.

- Pfister reserves the right to stop work immediately if progress payments are not forthcoming according to agreement.

- All invoices that are 30 days past due are subject to a 1.5 % service charge.

## GENERAL

- We will supply our insurance certificate at the signing of contract.

- Reference projects upon request.

- Access to building must be provided as discussed during preconstruction meeting.

- Any HVAC equipment which requires lifting and/or the disconnection from electrical or Freon pipes, must be completed by other.

- Most of the HVAC equipment located on the roof can be raised by our own personnel and equipment. If during the process, a malfunction is caused, either electrically or with regards to the Freon and/or compressors, Pfister cannot be held responsible. All efforts will be made, however, to raise the equipment without incurring any damage.


## ACCEPTANCE

We have read and we accept all of the above conditions as outlined:

Owner or Owner's Representative                                    Date
Company Name
Phone
Cell
Fax


Howard Semon, Pfister Maintenance, Inc.                          Date

# EXHIBIT "C"

*Charles Jones*
Provided by Signature
Information Solutions

HEREBY ISSUED TO:

# TIDELAND SEARCH CERTIFICATE

ACCOUNT: 747844473                                    REFERENCE: RM-65289

RED BANK TITLE AGENCY
ATTN: MAUREEN
25 SYCAMORE AVE
LITTLE SILVER,  NJ 07739-

SIGNATURE INFORMATION SOLUTIONS LLC CERTIFIES THAT NO PORTION OF THE PROPERTY HEREINAFTER
DESIGNATED IS PRESENTLY CLAIMED BY THE STATE OF NEW JERSEY AS AREA NOW OR FORMERLY BELOW MEAN
HIGH WATER AS SHOWN ON THE APPLICABLE TIDELANDS MAP PREPARED BY THE OFFICE OF ENVIRONMENTAL
ANALYSIS AND APPROVED BY THE TIDELANDS RESOURCE COUNCIL, SUBJECT TO THE RESERVATIONS WHICH APPEAR
ON THE ADOPTED MAP AND OVERLAY.

## APPLICABLE TIDELANDS MAP

TIDELANDS MAP NUMBER: N/A

TIDELANDS MAP DATE:

## DESIGNATED PROPERTY

COUNTY: UNION                          STATE: NEW JERSEY

MUNICIPALITY: TOWNSHIP OF BERKELEY HEIGHTS

BLOCK: 1301                                      LOT: 14.01

STREET NUMBER & NAME: 50 INDUSTRIAL ROAD

AS SHOWN ON TAX MAP DATED OR LAST REVISED ON: 01-JAN-2009

## SEARCH RESULTS:

FINDINGS: UNCLAIMED

DATED: 13-FEB-2012

FEE:          $30.00

TAX:           $.00                          Signature Information Solutions LLC
                                             has executed this certificate.
TOTAL:        $30.00

TD12-044-1160

**PATRIOT SEARCH**
UNITED STATES PATRIOT NAME SEARCH
U.S. Department of the Treasury

**RED BANK TITLE AGENCY**
25 Sycamore Ave.
Little Silver, NJ 07739
*CUSTOMER CONTACT: Richard E Marshall*

**REFERENCE: rm-65289**

*ORDER NUMBER: 668917*
*REPORT CONTROL NO: 1367162*
*REPORT RUN : 2/22/2012*

**FEE:**        **$ 2.00**
**TAX:**        **$ 0.00**
**TOTAL:**      **$ 2.00**

THE STATE CAPITAL TITLE & ABSTRACT CO. hereby certifies to RED BANK TITLE AGENCY that
it has searched the Specially Designated Nationals and Blocked Persons list maintained
by the United States Department of the Treasury, Office of Foreign Assets Control and
finds in the record the following:

NAME SEARCHED:   **THE FISHBEIN FAMILY PARTNERSHIP**                    (ENTITY)
THROUGH:         02/17/2012
                 **SEARCH FOR ABOVE NAME HAS COME BACK CLEAR**
                 --------------------------------------------

PLEASE NOTE: PURSUANT TO SANCTIONS IMPOSED BY THE U.S. DEPARTMENT OF TREASURY,
NO U.S. PERSON MAY DEAL WITH ANY LIBYAN OR IRAQI GOVERNMENT OFFICIAL WHETHER OR
NOT THEIR NAME APPEARS ON THE SPECIALLY DESIGNATED NATIONALS LIST.

**PATRIOT SEARCH**
UNITED STATES PATRIOT NAME SEARCH
U.S. Department of the Treasury

**RED BANK TITLE AGENCY**
25 Sycamore Ave.
Little Silver, NJ 07739
*CUSTOMER CONTACT: Richard E Marshall*

*REFERENCE: rm-65289*

*ORDER NUMBER: 669179*
*REPORT CONTROL NO: 1367542*
*REPORT RUN : 2/22/2012*

**FEE:**        **$ 4.00**
**TAX:**        **$ 0.00**
**TOTAL:**      **$ 4.00**

THE STATE CAPITAL TITLE & ABSTRACT CO. hereby certifies to RED BANK TITLE AGENCY that
it has searched the Specially Designated Nationals and Blocked Persons list maintained
by the United States Department of the Treasury, Office of Foreign Assets Control and
finds in the record the following:

NAME SEARCHED:   **FISHBEIN FAMILY LLC**                                      (ENTITY)
THROUGH:         02/22/2012
                 **SEARCH FOR ABOVE NAME HAS COME BACK CLEAR**
                 ---------------------------------------------

NAME SEARCHED:   **LUSARDI GROUP LLC**                                        (ENTITY)
THROUGH:         02/22/2012
                 **SEARCH FOR ABOVE NAME HAS COME BACK CLEAR**
                 ---------------------------------------------

PLEASE NOTE: PURSUANT TO SANCTIONS IMPOSED BY THE U.S. DEPARTMENT OF TREASURY,
NO U.S. PERSON MAY DEAL WITH ANY LIBYAN OR IRAQI GOVERNMENT OFFICIAL WHETHER OR
NOT THEIR NAME APPEARS ON THE SPECIALLY DESIGNATED NATIONALS LIST.

THE STATE CAPITAL TITLE & ABSTRACT CO.
830 BEAR TAVERN RD., TRENTON NJ 08628 (609) 771-3818   www.statecapital.net

**Data Trace**
*Provided By Signature*
*Information Solutions*

**Title #: RM-65289   Order #: MT-044-3423739**

**NEW JERSEY TAX & ASSESSMENT SEARCH**

**For: RED BANK TITLE AGENCY**

| | |
|---|---|
| **BLOCK** : 1301 | **ASSESSED OWNER** : THE FISHBEIN FAMILY PARTNERSHIP |
| **LOT** : 14.01 | **BILLING ADDRESS** : 685 LIBERTY AVENUE UNION, NJ 07083 |
| **QUAL** : | **LOT ADDRESS** : 50 INDUSTRIAL ROAD |
| **XLOT** : | **UNION** : BERKELEY HEIGHTS TWP (908) 665-0702 |
| | (MUNI CODE: 2001)   29 PARK AVENUE BERKELEY HEIGHTS NJ 07922 |

**INFORMATION**          : C.O. REQUIRED ON NEW CONSTRUCTION, ADDITIONS &
**(FOR RESALE)**            SMOKE DETECTOR INSPECTION REQUIRED AS PER NJAC 5:70-4.19
                           CALL (908) 464-2700 FOR INSPECTION
                           INSPECTION FEE 25

**ASSESSOR'S CODE**      : 4B - INDUSTRIAL    (NOT TO BE USED FOR DETERMINING NJ MANSION TAX)

**APX. LOT SIZE**        : 2.870 AC

**ASSESSED VALUES**      : LAND : $574,000  IMP. : $1,126,000  TOT. : $1,700,000

**TAX RATE**             : $3.585 PER $100 OF ASSESSED VALUE

**TAX EXEMPTIONS**       : NONE

**2011 TAXES**           : $60,945.00 BILLED; $1,713.47 OPEN PLUS PENALTY; $59,231.53 PAID

**-2012 - DUE DATE**     :

**QTR1 - 02/01**         : $15,236.25 OPEN PLUS PENALTY

**QTR2 - 05/01**         : $15,236.25 OPEN

**QTR3 - 08/01**         : TO BE DETERMINED

**QTR4 - 11/01**         : TO BE DETERMINED

**-2013 - DUE DATE**     :

**QTR1 - 02/01**         : TO BE DETERMINED

**QTR2 - 05/01**         : TO BE DETERMINED

**ADDED ASSESSMENTS** : NONE

**WATER ACCOUNT #** : PRIVATE - NJ AMERICAN WATER CO. 131 WOODCREST ROAD CHERRY HILL,NJ 08034
800-652-6987

**SEWER ACCOUNT #** : INCLUDED WITH TAXES

**CONFIRMED ASSESSMENTS** : NONE

**LIENS** : NONE

**ADDITIONAL BILLING** : SEE ADDENDUM

---

**Certificate as to current status of pending (unconfirmed) assessments:**
ORDINANCE #: NONE
TYPE OF IMPROVEMENT:
*Signature Information Solutions LLC* guarantees that the above information accurately reflects
the contents of the public record as of 02/14/2012

**REPORT FEE: $30.00**

**Data Trace**

*Provided By Signature
Information Solutions*

**Title #:** RM-65289   **Order #:** MT-044-3423739

**NEW JERSEY TAX & ASSESSMENT SEARCH**

**For:** RED BANK TITLE AGENCY

**BLOCK** : 1301
**LOT** : 14.01
**QUAL** :
**XLOT** :

**ASSESSED OWNER** : THE FISHBEIN FAMILY PARTNERSHIP
**BILLING ADDRESS** : 685 LIBERTY AVENUE UNION, NJ 07083
**LOT ADDRESS** : 50 INDUSTRIAL ROAD
**UNION** : BERKELEY HEIGHTS TWP (908) 665-0702
(MUNI CODE: 2001)   29 PARK AVENUE BERKELEY HEIGHTS NJ 07922

**ADDITIONAL BILLING**

**General Remark:**
  "SUBJECT TO ADD'L 6% PENALTY FOR BALANCES OVER $10,000.00"

**Miscellaneous:**
2011 4TH QTR $1,010.02 OPEN PLUS PENALTY

*Signature Information Solutions LLC* guarantees that the above information accurately reflects
the contents of the public record as of 02/14/2012

**REPORT FEE:** $30.00

G3/1.18   **Phone (800) 477-8288 ■ Fax (800) 677-3272 ■** P.O. Box 8488, Trenton, NJ 08650-0488

**JUDGMENT SEARCH**
Superior Court of New Jersey
US District Court of New Jersey
US Bankruptcy Court of New Jersey

**RED BANK TITLE AGENCY**
25 Sycamore Ave.
Little Silver, NJ 07739
*CUSTOMER CONTACT: Richard E Marshall*

*REFERENCE: rm-65289*

*ORDER NUMBER: 668917*
*REPORT CONTROL NO: 1367161*
*REPORT RUN:  2/22/2012  9:50 AM*
*CERTIFIED DATE: 02/17/2012*
**FEE:**          $ 10.00
**TAX:**          $ 0.00
**TOTAL:**        $ 10.00

THE STATE CAPITAL TITLE & ABSTRACT CO. hereby certifies to RED BANK TITLE AGENCY that it has searched the index of the Civil Judgment and Order Docket of the Superior Court of New Jersey and the indices of the United States District Court and United States Bankruptcy Court, District of New Jersey, and finds there to be no judgment or other docketed record referred to within the aforesaid court indices, constituting a General Lien on real property in New Jersey, which remains unsatisfied of record, nor does it find any CERCLA Lien on specific real property within New Jersey, nor any petition commencing proceedings in a Bankruptcy action, against the names searched, entered or filed during the period searched, except as follows:

| *NAME SEARCHED* | *FROM* | *TO* |
|---|---|---|
| **THE FISHBEIN FAMILY PARTNERSHIP** (ENTITY) | 02/17/1992 | 02/17/2012 |

***  WITH JUDGMENTS  ***

See Attached 2 Pages

THE STATE CAPITAL TITLE & ABSTRACT CO.

830 BEAR TAVERN RD., TRENTON NJ 08628 (609) 771-3818   www.statecapital.net

NAME SEARCHED:    **THE FISHBEIN FAMILY PARTNERSHIP**                    (ENTITY)
SEARCHED FROM:    02/17/1992    THROUGH:    02/17/2012

| DOCKET NUMBER | PAGE | DOCKET NUMBER | PAGE | DOCKET NUMBER | PAGE |
|---|---|---|---|---|---|
| J 22163610 | 1 | 11-34514 | 1 | 93CV00653 | 2 |
| J 12166811 | 1 | | | | |

*ABSTRACTS OF THE ABOVE CASE NUMBERS BEGIN NEXT PAGE*

rm-65289

1367161
668917
*CERTIFIED DATE: 02/17/2012*

SUPERIOR COURT OF NEW JERSEY _____

| | | |
|---|---|---|
| JUDGMENT: | J 221636-10 | ACTION TYPE: |
| CASE NUMBER: | L 004344 10 | VENUE: |
| ENTERED: | 08/31/2010 | |
| SIGNED: | 08/31/2010 | |

ACTION TYPE:     SUMMARY ACTION
VENUE:           BERGEN

CREDITOR(S):                    AWARD:    $152,231.09     DEBT # 1
    **COLE SCHOTZ MEISEL FORMAN LEONARD PA**
    ATTORNEY:  COLE SCHOTZ MEISEL F ORMAN&L P A
DEBTOR(S):
    **FISHBEIN FAMILY LLC**
NOTE: WITH COSTS AND A/F

*  *  * END OF ABSTRACT *  *  *


SUPERIOR COURT OF NEW JERSEY _____

JUDGMENT:      J 121668-11      ACTION TYPE:     SUMMARY ACTION
CASE NUMBER:   L 005092 10      VENUE:           UNION
ENTERED:       04/28/2011
SIGNED:        04/28/2011

CREDITOR(S):                    AWARD:    $279,959.96     DEBT # 1
    **COMMERCIAL REALTY ASSOCIATES**
    ATTORNEY:  CARELLA BYRNE CECCHI  O B & A
DEBTOR(S):
    **FISHBEIN FAMILY LLC**
NOTE: PLUS COSTS

*  *  * END OF ABSTRACT *  *  *


UNITED STATES BANKRUPTCY COURT _____

BANKRUPTCY NUMBER: 11-34514      VOLUNTARY
PETITION FILED:    08/17/11      CHAPTER          11
ORDER FOR RELIEF:  08/17/11

IN THE MATTER OF:
    **FISHBEIN FAMILY LLC, TAX ID: XX-XXX2123**
    685 LIBERTY AVE, UNION, NJ 07083
    ATTORNEY:  BRIAN W. HOFMEISTER
               TEICH GROH
               691 STATE HIGHWAY 33, TRENTON, NJ 08844

*  *  * END OF ABSTRACT *  *  *

1

rm-65289

1367161
668917
*CERTIFIED DATE: 02/17/2012*

## UNITED STATES DISTRICT COURT - DISTRICT OF NEW JERSEY

CASE NUMBER:    93CV00653
VENUE:          NEWARK

DEBT # 1

JUDGMENT FILED:    03/31/2009          AWARD:          $178.80

CREDITOR(S):**JOHN P. BEYEL**
            ATTORNEY:   GEORGE C. JONES
                        GRAHAM CURTIN, PA
                        4 HEADQUARTERS PLAZA, PO BOX 1991, MORRISTOWN, NJ 07962
            **MCELROY, DEUTSCH & MULVANEY**
            ATTORNEY:   GEORGE C. JONES
                        SEE ABOVE FOR ADDRESS
DEBTOR(S):   **THE FISHBEIN FAMILY PARTNERSHIP**
            ATTORNEY:   JOSEPH A. BOYLE
                        KELLEY DRYE & WARREN LLP
                        200 KIMBALL DRIVE, PARSIPPANY, NJ 07054

-----

DEBT # 2

JUDGMENT FILED:    03/31/2009          AWARD:          $98.89

CREDITOR(S):**WATERS, MCPHERSON & MCNEILL, P.C.**
            ATTORNEY:   BRIAN C. HARRIS
                        BRAFF, HARRIS & SUKONECK, ESQS.
                        570 W. MT. PLEASANT AVENUE, PO BOX 657, LIVINGSTON, NJ
                        07039
            **WILLIAM J. WARD ESQ.**
            ATTORNEY:   GLORIA B. CHERRY
                        BRAFF, HARRIS & SUKONECK
                        570 WEST MT. PLEASANT AVENUE, SUITE 200, PO BOX 657,
                        LIVINGSTON, NJ 07039
DEBTOR(S):   **THE FISHBEIN FAMILY PARTNERSHIP**
            ATTORNEY:   JOSEPH A. BOYLE
                        KELLEY DRYE & WARREN LLP
                        200 KIMBALL DRIVE, PARSIPPANY, NJ 07054

-----

* * * END OF ABSTRACT * * *

NAME SEARCHED:   **THE FISHBEIN FAMILY PARTNERSHIP**                    (ENTITY)
SEARCHED FROM:   02/17/1992      THROUGH:   02/17/2012

| UNIQUE NAME | DOCKET NUMBER | PAGE |
|---|---|---|
| FISHBEIN FAMILY LLC | J 22163610 | 1 |
| | J 12166811 | 1 |
| FISHBEIN FAMILY LLC | 11-34514 | 1 |
| THE FISHBEIN FAMILY PARTNERSHIP | 93CV00653 | 2 |

THIS INDEX IS PROVIDED FOR YOUR CONVENIENCE ONLY AND SHOULD NOT BE RELIED UPON FOR
TITLE PURPOSES. EACH JUDGMENT SHOULD BE REVIEWED INDEPENDENTLY.

**CONTINUATION/APPEND SEARCH**
Superior Court of New Jersey
US District Court of New Jersey
US Bankruptcy Court of New Jersey

**RED BANK TITLE AGENCY**
25 Sycamore Ave.
Little Silver, NJ 07739
*CUSTOMER CONTACT: Richard E Marshall*

*REFERENCE: rm-65289*

ORDER NUMBER: 669179
REPORT CONTROL NO: 1367541
REPORT RUN: 2/22/2012  12:18 PM
CERTIFIED DATE: 02/17/2012
**FEE:**         $ 20.00
**TAX:**         $ 0.00
**TOTAL:**       $ 20.00

THE STATE CAPITAL TITLE & ABSTRACT CO. hereby certifies to RED BANK TITLE AGENCY that it has searched the index of the Civil Judgment and Order Docket of the Superior Court of New Jersey and the indices of the United States District Court and United States Bankruptcy Court, District of New Jersey, and finds there to be no judgment or other docketed record referred to within the aforesaid court indices, constituting a General Lien on real property in New Jersey, which remains unsatisfied of record, nor does it find any CERCLA Lien on specific real property within New Jersey, nor any petition commencing proceedings in a Bankruptcy action, against the names searched, entered or filed during the period searched, except as follows:

*NAME SEARCHED*                                          *FROM*          *TO*

**FISHBEIN FAMILY LLC**                                  02/17/1992      02/17/2012
(ENTITY)
                            ***   WITH JUDGMENTS ***

**LUSARDI GROUP LLC**                                    02/17/1992      02/17/2012
(ENTITY)
                            *** CLEAR ***

See Attached 2 Pages

THE STATE CAPITAL TITLE & ABSTRACT CO.

830 BEAR TAVERN RD., TRENTON NJ 08628 (609) 771-3818   www.statecapital.net

*NAME SEARCHED:* **FISHBEIN FAMILY LLC**                                    (ENTITY)
*SEARCHED FROM:* *02/17/1992    THROUGH:    02/17/2012*

| *DOCKET NUMBER* | *PAGE* | *DOCKET NUMBER* | *PAGE* | *DOCKET NUMBER* | *PAGE* |
|---|---|---|---|---|---|
| J 22163610 | 1 | 11-34514 | 1 | 93CV00653 | 2 |
| J 12166811 | 1 | | | | |

— — — — — — — — — — — — — — — — —

*NAME SEARCHED:* **LUSARDI GROUP LLC**                                      (ENTITY)
*SEARCHED FROM:* *02/17/1992    THROUGH:    02/17/2012*

SEARCH FOR ABOVE NAME HAS COME BACK CLEAR

— — — — — — — — — — — — — — — — —

*ABSTRACTS OF THE ABOVE CASE NUMBERS BEGIN NEXT PAGE*

rm-65289                                                        1367541
                                                               669179
                                            *CERTIFIED DATE: 02/17/2012*
                    SUPERIOR COURT OF NEW JERSEY            _____
JUDGMENT:      J 221636-10        ACTION TYPE:       SUMMARY ACTION
CASE NUMBER:   L 004344 10        VENUE:             BERGEN
ENTERED:       08/31/2010
SIGNED:        08/31/2010

  CREDITOR(S):                    AWARD:    $152,231.09      DEBT # 1
      **COLE SCHOTZ MEISEL FORMAN LEONARD PA**
      ATTORNEY:  COLE SCHOTZ MEISEL F ORMAN&L P A
  DEBTOR(S):
      **FISHBEIN FAMILY LLC**
  NOTE: WITH COSTS AND A/F


              *  *  * END OF ABSTRACT *  *  *



                   SUPERIOR COURT OF NEW JERSEY          _____
JUDGMENT:      J 121668-11        ACTION TYPE:       SUMMARY ACTION
CASE NUMBER:   L 005092 10        VENUE:             UNION
ENTERED:       04/28/2011
SIGNED:        04/28/2011

  CREDITOR(S):                    AWARD:    $279,959.96      DEBT # 1
      **COMMERCIAL REALTY ASSOCIATES**
      ATTORNEY:  CARELLA BYRNE CECCHI  O B & A
  DEBTOR(S):
      **FISHBEIN FAMILY LLC**
  NOTE: PLUS COSTS


              *  *  * END OF ABSTRACT *  *  *



              UNITED STATES BANKRUPTCY COURT          _____
BANKRUPTCY NUMBER: 11-34514          **VOLUNTARY**
PETITION FILED:    08/17/11          **CHAPTER**              11
ORDER FOR RELIEF:  08/17/11

  IN THE MATTER OF:
      **FISHBEIN FAMILY LLC, TAX ID: XX-XXX2123**
      685 LIBERTY AVE, UNION, NJ 07083
      ATTORNEY:  BRIAN W. HOFMEISTER
                 TEICH GROH
                 691 STATE HIGHWAY 33, TRENTON, NJ 08844


              *  *  * END OF ABSTRACT *  *  *



                            1

rm-65289

1367541
669179
*CERTIFIED DATE: 02/17/2012*

### UNITED STATES DISTRICT COURT - DISTRICT OF NEW JERSEY

CASE NUMBER:          93CV00653
VENUE:                NEWARK

                                              DEBT # 1

JUDGMENT FILED:       03/31/2009
                                  AWARD:              $178.80

CREDITOR(S):**JOHN P. BEYEL**
             ATTORNEY:  GEORGE C. JONES
                        GRAHAM CURTIN, PA
                        4 HEADQUARTERS PLAZA, PO BOX 1991, MORRISTOWN, NJ 07962
             **MCELROY, DEUTSCH & MULVANEY**
             ATTORNEY:  GEORGE C. JONES
                        SEE ABOVE FOR ADDRESS
DEBTOR(S):   **THE FISHBEIN FAMILY PARTNERSHIP**
             ATTORNEY:  JOSEPH A. BOYLE
                        KELLEY DRYE & WARREN LLP
                        200 KIMBALL DRIVE, PARSIPPANY, NJ 07054

_____

                                              DEBT # 2
JUDGMENT FILED:       03/31/2009
                                  AWARD:              $98.89

CREDITOR(S):**WATERS, MCPHERSON & MCNEILL, P.C.**
             ATTORNEY:  BRIAN C. HARRIS
                        BRAFF, HARRIS & SUKONECK, ESQS.
                        570 W. MT. PLEASANT AVENUE, PO BOX 657, LIVINGSTON, NJ
                        07039
             **WILLIAM J. WARD ESQ.**
             ATTORNEY:  GLORIA B. CHERRY
                        BRAFF, HARRIS & SUKONECK
                        570 WEST MT. PLEASANT AVENUE, SUITE 200, PO BOX 657,
                        LIVINGSTON, NJ 07039
DEBTOR(S):   **THE FISHBEIN FAMILY PARTNERSHIP**
             ATTORNEY:  JOSEPH A. BOYLE
                        KELLEY DRYE & WARREN LLP
                        200 KIMBALL DRIVE, PARSIPPANY, NJ 07054

_____

                *  *  * END OF ABSTRACT *  *  *

```
NAME SEARCHED:   FISHBEIN FAMILY LLC                              (ENTITY)
SEARCHED FROM:  02/17/1992    THROUGH:   02/17/2012
UNIQUE NAME                             DOCKET NUMBER      PAGE

FISHBEIN FAMILY LLC                     J 22163610          1
                                        J 12166811          1
FISHBEIN FAMILY LLC                     11-34514            1
THE FISHBEIN FAMILY PARTNERSHIP         93CV00653           2
```

THIS INDEX IS PROVIDED FOR YOUR CONVENIENCE ONLY AND SHOULD NOT BE RELIED UPON FOR
TITLE PURPOSES. EACH JUDGMENT SHOULD BE REVIEWED INDEPENDENTLY.