PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Tel.: (212) 262-6900
Fax: (212) 977-1649
Gary F. Eisenberg
Jeffrey D. Vanacore

*Attorneys for SPF 2011 Owner LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In the Matter of:<br><br>FISHBEIN FAMILY, LLC,<br><br>                  Debtor. | ) CASE NO. 11-34514 (NLW)<br>) CHAPTER 11<br>) STATEMENT OF SPF 2011 OWNER LLC AND<br>) LIMITED OBJECTION TO VERIFIED APPLICATION<br>) IN SUPPORT OF § 363 FOR AN ORDER: (1)<br>) APPROVING FORM OF PURCHASE AND SALE<br>) AGREEMENT FOR THE SALE OF 50 INDUSTRIAL<br>) ROAD, BERKELEY HEIGHTS, NEW JERSEY; (2)<br>) APPROVING BIDDING PROCEDURES AND<br>) BREAKUP FEE; (3) SCHEDULING A HEARING TO<br>) APPROVE THE SALE TO THE HIGHEST AND BEST<br>) BIDDER; AND (4) GRANTING RELATED RELIEF<br>) HEARING DATE:   March 12, 2012<br>)                              ORAL ARGUMENT REQUESTED |

**STATEMENT AND LIMITED OBJECTION
OF SECURED CREDITOR, SPF 2011 OWNER LLC**

SPF 2011 Owner LLC ("SPF" or the "Secured Creditor") has an undisputed first priority lien (the "Lien") to secure payment of the debt owed to SPF as set forth in its secured proof of claim (number 23-1 on the Claims Register in this case, the "Claim"). The Lien attaches to all of the real property that the Debtor owns, including the property commonly referred to as 50 Industrial Road, Berkeley Heights, New Jersey 07922 (the "Property"). The other properties owned by the Debtor are not the subject of the Application (defined in the following sentence) to

which this statement and limited objection (the "Limited Objection") apply. SPF is filing this Limited Objection to clarify certain parts of the Debtor's application (the "Application") to sell the Property (the "Sale") and respectfully states as follows:

    I.    <u>SPF Supports the Sale of the Property, Subject to this Limited Objection</u>

    1.    As the Debtor is well aware and has so stipulated in the Application, the Debtor is obligated to the Secured Creditor in the amount of approximately $13,000,000.00. Indeed, the filed amount of the Claim is $13,312,260.46. Under the loan documents evidencing the Claim (the "Loan Documents"), the Debtor has monthly payment obligations to the Secured Creditor (the "Monthly Payments") that it has failed to make since before the Petition Date.

    2.    SPF believes the Sale of the Property is in the best interest of all parties and supports the Sale of the Property, subject to this Limited Objection.

    3.    This Limited Objection is filed to preserve SPF's rights and to persuade the Court to modify the proposed form of order approving the Sale (the "Sale Order") consistent with SPF's limited objection.

    II.    <u>The Secured Creditor is Unlikely to Credit Bid, But Reserves the Right To Do So</u>

    4.    Pursuant to Paragraph 29(f) of the Application, the Debtor states in bold capitalized letters that "**No Credit Bidding will be Permitted**." It is unclear why the Debtor has taken this position, but it is contrary to established case law in the Third Circuit.

    5.    The Third Circuit has held that while credit bidding may be restricted under a plan of reorganization under Section 1129,[1] sales of property under Section 363(k) must allow credit bidding, absent cause. See <u>In re Philadelphia Newspapers, LLC</u> 599 F.3d 298 (3rd Cir. 2010).

    6.    Pursuant to Section 1129(b)(2)(A), the Court in <u>Philadelphia Newspapers</u> found that Section 1129(b)(2)(A) must be read in the disjunctive and the plain meeting permits a debtor

---

[1] All references are to the United States Bankruptcy Code, 11 U.S.C. 101 et seq.

-2-

to conduct an asset sale under subsection (b)(2)(A)(iii) <u>without</u> allowing a secured lender to credit bid. Id. at 310.

7. However, the rule announced in <u>Philadelphia Newspapers</u> does not apply to asset sales conducted under section 363(k). Id. at 320.

8. Section 363(k) states that "property that is subject to a lien that secures an allowed claim, <u>unless the court for cause orders otherwise</u> the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." [Emphasis added].

9. The Application filed by the Debtor is devoid of any reason or justification for excluding the Secured Creditor from credit bidding. As 363(k) makes clear, a court can only restrict credit bidding for "cause" shown. The Application fails to recite any reason to prohibit the Secured Creditor from credit bidding.

10. Fortunately for the Debtor, the point is moot with respect to the Application, because the Secured Creditor does not intend to credit bid at this Sale. However, as a matter of principle, the Secured Creditor objects to the Debtor's attempt to restrict credit bidding. Therefore, the Secured Creditor's lack of objection to this Sale is not to be construed as a lack of objection to any further attempt by the Debtor to limit or condition in any way the Secured Creditor's credit bid rights under Section 363(k) or otherwise.

### III. The Secured Creditors Lien Must Attach to the Proceeds of the Sale

11. The Secured Creditor has an undisputed first priority Lien on the Property. In the event any party believes otherwise, the Secured Creditor objects to the Sale of the Property until priority is established.

12. The Secured Creditor seeks to make clear that, notwithstanding anything to the contrary in the Application or any other document, the Secured Creditor's Lien attaches to the

proceeds of the Sale in the exact same manner and with all rights the Secured Creditor had on the Property.  The Sale Order should include a provision so stating.  A provision stating that "Secured Creditor's Lien upon the Property shall remain in place until the closing of the Sale.  Upon closing of the Sale, Secured Creditor's Lien attaches to all of the proceeds of the Sale to the same validity, extent and priority as existing immediately prior to closing of the Sale.  The Debtor shall hold all of the proceeds of the Sale (other than closing adjustments as expressly provided in the contract of sale attached to the Application and the reasonable and customary legal fees of the Debtor's counsel handling the closing of the Sale incurred directly in connection with the closing of the Sale) in an account as specified in this Order, pending further order of this Court."

    IV.    <u>The Proceeds of the Sale Must be Placed in a Financial Institution with the Least Risk</u>

13.    As was learned during the financial meltdown of 2007, not all banks are created equal.  Some are well managed, some not, and some are teetering on the brink of insolvency.[2]

14.    The importance of depositing the proceeds of the Sale of the Property in a adequately capitalized and well-run and managed bank cannot be overstated.

15.    In fact, the security of funds in bankruptcy cases is so important that Congress passed Section 345 to ensure bankruptcy funds are safe and secure.  Moreover, the Office of the United States Trustee publishes a list of approved banks (the "Approved List") that satisfy the requirements of Section 345.[3]  The importance of keeping the proceeds from the Sale of the Property secure are of paramount importance to SPF.  Further, to the extent that the proceeds from the Sale exceed in dollar amount the depositary insurance maximum, the Debtor must be

---

[2] A list of failed banks can be found at http://www.fdic.gov/bank/individual/failed/banklist.html.  Although troubled banks are not officially reported by the FDIC, unofficial lists (which are quite predictive), can be found at http://problembanklist.com/

[3] See http://www.justice.gov/ust/.  Of the thousands of banks that operate in the United States, only a fraction are depository institutions approved by the Office of the United States Trustee.

-4-

required to hold the proceeds of the Sale so as to maximize the insurance protection of such funds so long as they are held by the Debtor as required under the Sale Order.

## V.    The Closing Costs Must be Reasonable

16.    The Secured Creditor has no objection to the closing costs, provided they are reasonable and customary.

## VI.    Multiple Properties

17.    Pursuant to the Application, the Debtor seeks to sell only the Property at this particular Sale.  The Secured Creditor seeks to make clear that its first priority Lien and absolute assignment of rents continues on and with respect to the other properties described in Paragraph 8 of the Application (the "Other Properties").  The terms of this proposed Sale outlined in the Application do not in any way alter the rights of the Secured Lender in the Other Properties.

## VII.    Conclusion

18.    Subject to resolution of the foregoing with the Debtor, the Secured Creditor does not object to the Sale of the Property.

Dated: March 9, 2012
New York, New York

Respectfully submitted,

PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, NY  10112-0085
212.262.6900

By: */s/ Gary F. Eisenberg*
   Gary F. Eisenberg
   Jeffrey D. Vanacore

*Attorneys for SPF 2011 Owner, LLC*